THE MEXICAN NATIONAL RAILWAY COMPANY v. JAMES O. JACKSON.

No. 358.—Decided January 23, 1896.

**1. Local Law—Extra-Territorial Injuries.**

The wrong complained of (personal injury to a servant by negligence) occurred in the Republic of Mexico. This being pleaded and shown by the defendant, the rights of the parties must be determined by the provisions of the law of that country. (P. 112.)

**2. Remedy in Transitory Actions.**

An action for damages for personal injuries is transitory, and may be maintained in any place where the defendant may be found, unless there be reason why the court whose jurisdiction is invoked should not act in the matter. (P. 113.)

**3. Comity—Extra Territorial Remedies.**

The courts of this State will not undertake to adjudicate rights which originated in another State or country under statutes materially different from the law of this State in relation to the same subject. (Railway v. McCormick, 71 Texas, 660; Richards v. Railway, 68 Texas, 375.) (P. 114.)

**4. Case in Judgment—Laws of Mexico.**

Suit for personal injuries suffered by an employe of the defendant railway, in Mexico, through the negligence of defendant's conductor and vice-principal under Texas statutes. The road extended through Texas and the suit for damages was brought in this State, of which the plaintiff was a citizen. Held: That the laws of Mexico giving right of action (which laws being pleaded and proved by defendant are set forth in the opinion) are materially different from the laws of Texas, and the Texas courts will not undertake to adjudicate the rights of the parties. (P. 114.)

**5. International Comity.**

Comity would seem to forbid the courts of Texas assuming to determine the burdens upon a great national highway of a neighboring country; besides, the crowded condition of the dockets of the courts of the State, from domestic litigation, dissuades from assuming the burden of adjusting contests against the foreign road while adequate local remedies exist and are accessible to the injured parties. (P. 117.)

ERROR to Court of Civil Appeals for Fourth District, in an appeal from Webb County.

Jackson, a citizen of Texas, sued the Mexican National Railroad Company, a Mexican corporation whose line of railway extended into Texas, for personal injuries received while in the service of the defendant in Mexico. He recovered judgment for $5000, and on appeal by defendant it was affirmed by the Court of Civil Appeals, whereupon this court granted writ of error on appellant's application.

*Dodd & Mullaly,* for plaintiff in error.

The Court of Civil Appeals erred in its conclusion of law that there is no such difference between the law in Texas and the laws of Mexico, applicable to the facts of this case, as should forbid our courts taking jurisdiction of this action. Railway v. McCormick, 71 Texas, 660; Richards v. Railway, 68 Texas, 375; De Harn v. Railway, 86 Texas, 68.

The court erred in its conclusion of law that, in determining the duty of the courts of Texas to take jurisdiction of this case, the laws of Mexico

should be considered only in so far as they are applicable to the facts of this particular case, and that all the provisions of said laws upon this class of cases—damages for personal injuries—not applicable to these particular facts, should be disregarded. The whole system of the Mexican laws upon the subject matter of this action should be examined, and if found not to be analogous or similar to our laws upon the same subject matter, then the cause should not be entertained or adjudicated.

*E. A. Atlee* and *Charles C. Pierce*, for defendant in error.

Under the laws of Mexico, where the injuries were received, an action for damages may be maintained by the person injured, against the railroad company whose negligence caused the injuries; such action being transitory, its enforcement not being against the laws nor the public policy of the State of Texas, and the party liable for damages being found within the jurisdiction of the trial court, the relief prayed for may be granted. Railway v. Richards, 68 Texas, 375; Railway v. McCormick, 71 Texas, 660; Willis v. Railway, 61 Texas, 432; Herrick v. Railway, 31 Minn., 11; Morris v. Railway, (Iowa) 19 Am. & Eng. Ry. C., 180; Knight v. Railway, 108 Pa. St., 250; Higgins v. Railway, 155 Mass., 176; Railway v. McMullen, 117 Ind., 439; Wooden v. Railway, 126 N. Y., 10; Burns v. Railway, 113 Ind., 169; Railway v. Cox, 145 U. S., 593; Dennick v. Railway, 103 U. S., 11.

BROWN, ASSOCIATE JUSTICE.—The plaintiff in error is a corporation operating a line of railroad in the Republic of Mexico, which extends into the State of Texas. The defendant in error was in the employ of that railroad company in the Republic of Mexico, and while engaged in the performance of duties as such employee was injured at the station of La Ventura, in the said Republic. The injuries received were serious and of a permanent nature. The injury was caused by the negligence of the conductor, who was the vice principal of the railroad company.

The defendant below, by special plea, set up and pleaded the laws of Mexico in such cases, alleging that the contract of service was entered into in that Republic, and the injury occurred within the Republic of Mexico; that it was entitled to an adjudication under those laws, which are so dissimilar to the laws of Texas that the courts of this State ought not to undertake to adjudicate them, and that the defendant still owned and operated its line of railroad in Mexico, and was subject to the jurisdiction of the courts of that country.

Proof was made of the laws of Mexico, from which we copy the following articles as being material to the determination of the question involved:

"Art. 72. Congress has power: * * XXII. To enact laws governing general lines of communication, and governing postoffices and mails."

"Art. 4. A crime is the voluntary infraction of a penal law, doing that which it prohibits or neglecting to do that which it commands."

"Art. 5. A misdemeanor is the infraction of police regulations or proclamations and good government."

"Art. 6. There are intentional crimes and crimes resulting from neglect."

"Art. 11. Negligent crimes exist—I. Where an act is done or a duty omitted which, although lawful in itself, is not so by reason of its consequences, if the accused fails to provide against such consequences through negligence, want of reflection, or care, by not making proper investigations, by not taking necessary precautions. * * *"

"III. Where the question relates to an act which is punishable solely by reason of the circumstances under which it is done, or by reason of a circumstance personal to the party aggrieved, if the accused is ignorant of such circumstances through not having previously made the investigations which the duty of his profession or the importance of the case demands."

"Art. 301. The civil liability arising from an act or omission contrary to a penal law consists in the obligation imposed on the party liable to make (1) Restitution, (2) Reparation, (3) Indemnization, and (4) Payment of Judicial Expenses."

"Art 304. Reparation comprehends: the payment of all the damages caused to the injured party, to his family or to a third person, with the violation of a right which is formal, existing and not simply possible, if such damages are actual, and arise directly and immediately from the act or omission complained of, or there be a certainty that such act or omission must necessarily cause, as a proximate and inevitable result."

"Art. 305. Indemnization imports: the payment of damages, that is, that which the injured party fails to enjoy as a direct and immediate consequence of an act or omission by which a formal, existing, and not merely possible right is attacked, and of the value of the fruits of the thing usurped and already consumed, in the cases in which the same should be done conformably with civil right."

"Art. 306. The condition required by the two preceding articles, that the damages and injuries should be actual, shall not prevent that the indemnization of subsequent damages and injuries be exacted by a new suit, when they shall have accrued, if they proceed directly from, and as a necessary consequence of, the same act or omission from which resulted the previous damages or injuries."

"Art. 307. The payment of judicial expenses solely embraces those absolutely necessary, which the injured party incurs for the purpose of investigating the act or omission which causes the criminal proceeding, and to avail himself of his rights in such proceeding or in the civil suit."

"Art. 308. The civil responsibility can not be declared except at the instance of the party entitled to recover."

"Art. 309. The judges who adjudicate upon the civil responsibility

shall be controlled by the provisions of this title, in so far as its provisions extend; on other questions they shall follow, according to the nature of the suit, the provisions of the civil or of the commercial laws which may be in effect at the time of the happening of the act or omission causing the civil responsibility."

"Art. 310. The right to civil responsibility forms part of the estate of a decedent and descends to his heirs and successors, provided it be not the case of the following article, or that it arise from injury or defamation and that, the offended person having been able in his lifetime to bring his suit, he neither did so nor directed his heirs to sue; in such case the offense shall be understood as remitted."

"Art. 311. The act to enforce civil responsibility demanding support of a person guilty of homicide is personal, and belongs exclusively to the persons named in the end of article 318, as directly damaged. Consequently, such action forms no part of the estate of the deceased, nor is it extinguished although the latter pardon the offense in life."

"Art. 313. The judges who take cognizance of suits based upon civil responsibility shall endeavor that the amount and terms of payment be fixed by agreement of the parties. Failing in this, the provisions of the following articles shall be observed."

"Art. 321. In case of blows or wounds from which the injured party does not remain crippled, lamed or deformed, he shall have the right that the responsible party pay him all expenses of cure, the damages he may have suffered, and that which he may fail to gain during the time which in the opinion of competent persons he may not be able to do the work by which he subsisted. But it is essential that the inability to work should be the direct result of the wounds or blows, or of a cause which is the immediate effect of such blows or wounds."

"Art. 322. If the inability of the injured party to devote himself to his accustomed work be permanent, from the moment in which he shall recover and can properly devote himself to other and different work, which shall be lucrative and appropriate to his education, habits, social position and physical constitution, the civil responsibility shall be reduced to paying him the sum which his ability to earn in his new employment falls short of his daily earnings in his former occupation."

"Art. 323. If the blows or wounds cause the loss of any member not indispensable for work, or the person wounded or struck remain otherwise crippled, lamed or deformed, by that circumstance he shall have the right not only to the damages and injuries, but also to the sum which the judge may determine as extraordinary indemnity, considering the social position and sex of the person and the part of the body remaining crippled, lamed or deformed."

"Art. 324. The gain which the injured party fails to earn during his inability to work shall be computed by multiplying the sum which he formerly earned per day by the number of days of his disability."

"Art. 325. The provisions of the foregoing articles for computing the civil responsibility for wounds or blows shall be applied to all other

cases where, in violation of a penal law, a person may cause the illness of another, or may have placed him under disability to work."

"Art. 326. No person shall be charged with civil liability upon an act or omission contrary to a penal law, unless it be proven: that the party sought to be charged usurped the property of another; that without right he caused, by himself or by means of another, damages or injuries to the plaintiff; or that, the party sought to be charged being able to avoid the damages, they were caused by a person under his authority."

"Art. 327. Whenever any of the conditions of the preceding article are established, the defendant shall be civilly liable, without regard to whether he be absolved or condemned to criminal liability."

"Art. 330. In order that masters may be held civilly liable through their clerks and servants, according to the provisions of articles 326 and 327, it is an indispensable condition that the acts or omissions of the clerks or servants, causing the liability, shall occur in the service for which they were employed."

"Art. 331. Under the condition of the preceding article those liable are: * * * railroad companies,"

"Art. 363. (Limitation.) The various actions by which the civil responsibility may be demanded, or the execution of a final judgment declaring that such responsibility has been incurred by the accused may be asked, shall be extinguished according to the terms and in the manner provided by the Civil Code or the Commercial Code, according to the nature of the demand and the subject matter treated of."

"Art. 364. Amnesty shall not extinguish the civil responsibility, nor the actions to exact it, nor the legal rights which third persons may have acquired. Nevertheless, when the responsibility may not yet have been made effective, and the demand is not for restitution but for reparation of damages, of indemnity for injuries, or for payment of judicial expenses, the guilty person shall remain free from such obligations only when it is so declared in the amnesty and they are expressly left to the charge of the public treasury."

"Art. 365. A pardon shall in no case extinguish the civil responsibility, nor the actions to enforce it, nor the legal rights which third persons may have acquired."

"Art. 366. Limitation is interrupted by the criminal proceding until final judgment is pronounced. This done, the term of limitation commences to run anew."

"Art. 28. Until it is determined in the new Code of Procedure what judges shall have jurisdiction and the mode of proceeding, in suits to enforce civil liability, the following rules shall be observed: * * V. Actions to enforce the civil liability may be brought before a court of civil jurisdiction, whether or not the criminal proceeding has been commenced; but, while the latter is pending, the proceedings in the former shall be stayed."

"Art. 20. When a judicial controversy can be decided neither by the

text nor by the natural meaning or spirit of the law, it must be decided according to the general principles of right, taking into consideration all circumstances of the case."

"Art. 21.   In case of conflict of rights and the absence of express law for the especial case, the controversy shall be decided in favor of him who seeks to avoid damages and not in favor of him who seeks to obtain profit.   If the conflict should be between equal rights, or rights of the same species, it shall be decided observing the greatest equality possible between the parties."

"Art. 1095.   Limitation bars in three years:   *   *   VIII.   Civil responsibility for injuries, whether done by word or by writing, and that which arises from damage caused by person or animals, and which the law imposes upon the representatives of such persons or the owners of the animals."

"Art. 1.   The executive shall regulate the service of railroads, telegraphs and telephones constructed, or which in the future may be constructed upon Mexican territory, according to the following bases:

I.   Railroads, telegraphs and telephones, which in the Federal District and Territory of Lower California unite together two or more municipalities, or the Federal District and Territory of Lower California with one or more States, those which communicate two or more States with each other, those which touch any port in the territorial boundary line of the Republic and foreign countries, or run parallel therewith within a region of twenty leagues, are known as general lines of communication within the meaning of section XXII. of art. 72 of the Constitution.

II.   These general lines of communication and their branches shall be subject exclusively to the Federal Legislative, Executive and Judicial powers, in their respective spheres, in all cases where any of the following matters are involved:

G.   Construction and repair of the works.   Crimes committed against the security or integrity of the works or against the operation of the lines.

H.   Security of the same works for which the companies are obligated, and crimes or misdemeanors of the companies through delays or obstruction, carelessness or fault in the service and for accidents or mishaps in the operation."

"Art. 52.   The coaches and cars which enter into the make-up of a train shall have the drawheads of the same height, so that their centers will be opposite to each other."

"Art. 83.  The conductor of a train en route is the person in command of all the train crew, including the engineer and fireman."

"Art. 121.   Engineers shall communicate by means of a steam whistle with the agents charged with the duty of watching, and with the conductors of trains, using the following signal:   Three blasts or sounds of the whistle will be the signal that the engine or train is going to move backward."

"Art. 124. Companies (Railway) are liable for accidents which occur through the failure to observe the provisions of this chapter (Chap. 7) respecting signals, and for employing persons who do not have certificates showing that their sight and hearing are free from infirmity which does not permit them to recognize the signals."

"Art. 184. Companies (Railway) are liable for all faults or accidents which occur through tardiness, negligence, imprudence or want of capacity of their employes."

"Art. 208. All violations of this law, which companies (railway) commit, shall be subject to punishment by the administration by fine up to five hundred dollars, which the Department of Public Works shall assess, reserving always the right of individuals, through indemnity, and the liability which the companies may have incurred through criminal acts or omissions committed by them."

The trial court rendered judgment for the plaintiff in that court, J. O. Jackson, for the sum of $5000, from which appeal was taken, and the judgment affirmed by the Court of Civil Appeals. The law of Mexico, under which plaintiff's claim originated, having been pleaded and proved by the defendant, the rights of the parties must be determined by its provisions. "It would be as unjust to apply a different law as it would be to determine the rights of the parties by a different transaction." (Story Con., Laws, 38.) This is a transitory action and may be maintained in any place where the defendant is found, if there be no reason why the court whose jurisdiction is invoked should not entertain the action. The plaintiff, however, has no legal right to have his redress in our courts; nor is it specially a question of comity between this State and the government of Mexico, but one for the courts of this State to decide, as to whether or not the law, by which the right claimed must be determined, is such that we can properly and intelligently administer it, with due regard to the rights of the parties. (Gardner v. Thomas, 14 John., 134; Johnson v. Dalton, 1 Cow., 543.)

The decisions of this court (well sustained by high authority) establish the doctrine that the courts of this State will not undertake to adjudicate rights which originated in another State or country, under statutes materially different from the law of this State in relation to the same subject. (Railway v. McCormick, 71 Texas, 660; Railway v. Richards, 68 Texas, 375.)

Many difficulties would present themselves in an attempt to determine the meaning of the Mexican law and to apply it in giving redress to the parties claiming rights under it. We understand the Mexican courts are not governed by precedent, and we have no access to reports of adjudicated cases of those courts from which we could ascertain their interpretation of these laws. The language of some of the articles quoted is ambiguous, and we find great difficulty in determining what would be a proper interpretation of the law. We might or might not give the same effect to the language that is given to it in the courts of Mexico. There could be no reasonable certainty that the parties' rights

would be adjusted here as they would be if the case were tried in the courts of that country, which is their right, for it is well settled that, if one State undertakes to enforce a law of another State, the interpretation of that law as fixed by the courts of the other State is to be followed. This difficulty of itself furnishes a sufficient reason for the courts of this State to decline to assume jurisdiction of this class of cases.

We will briefly compare some of the provisions of the law of Mexico with the law of this State, showing wherein they differ, and the impracticability of attempting to administer them here. By the Mexican law the plaintiff's right does not rest upon the fact of negligence on the part of the defendant, but such negligence, in order to give a right of action, must be of such character as to make the act a crime under that law. We must first determine whether the defendant would be subject to a criminal prosecution in Mexico, before we can proceed to administer the remedy provided for the wrong. If it is not a crime, no right of action exists, no matter how grossly negligent may be the act which caused the injury. While this is not a criminal prosecution, in the sense that a punishment for the crime is to be inflicted in this suit, it does require a determination of the guilt of the defendant in order to give relief to the plaintiff. In this State, under the facts of this case, no such prosecution could be maintained, nor in any case is the right of recovery made to depend upon the criminality of the act; however, in some cases a recovery cannot be had except upon proof of facts which would show the act to be contrary to a penal statute. The acquittal of the defendant under the Mexican law does not bar the right to recover in a civil proceeding, but the civil action for damages is suspended by the pendency of the criminal prosecution, if such has been commenced, until its final determination. If a suit were pending in a court of this State under that law, and a criminal proceeding should be inaugurated in the courts of Mexico, the court here could not recognize this requirement of the law of that country, and stay the action until the prosecution there had been concluded. We can see no reason for the requirement of the law of Mexico, that the civil proceeding should be stayed during the prosecution of the criminal charge except that the government would thereby secure the presence of the injured party as a witness, and his aid in the punishment of the guilty party. To permit such suits to be maintained in our courts would enable the plaintiffs therein to evade the laws of that country in that particular and would be against the policy of that government. While it is true that this is not a prosecution for the crime as such, nor a suit for a penalty, it is so closely related to that class of proceedings, that the courts of this State should not aid in the enforcement of rights arising under those laws which practically require the defendant to be tried for a crime in the civil action.

Under the laws of Mexico the judge before whom the civil action is commenced is required to induce the parties to adjust their differences and settle their grievance by agreement, if he can do so. This our courts cannot do. If this be regarded as matter of procedure, it is of a character

which may involve a substantial benefit to the parties, of which the defendant would be deprived by permitting the action to be prosecuted in the courts of this State.

If we conclude that the plaintiff is entitled to relief, then we must determine what he has a right to recover, and what protection the defendant is entitled to receive by the judgment of the court under the law proved in this case.   By that law the plaintiff would be entitled to recover for all actual damages existing at the time of the trial, and such as must necessarily result therefrom.   By our law he would recover for all such ·damages, and for all such as might probably thereafter result from the injury.   Thus under our law, the plaintiff would have a present right to that which he could not recover by the terms of the Mexican law except by subsequent actions therefor.   If the plaintiff remain lamed or crippled, disfigured or maimed by the injury, the Mexican law permits the judge to give, in addition to the actual damages, what is termed extraordinary indemnity, in a sum that might be by the judge deemed proper considering the plaintiff's social condition.   How could a court in Texas ascertain what this extraordinary indemnity is to be?   Is it compensatory, or vin-·dictive damages?   In this State a party by reason of social position is not entitled to more or less compensation for such an injury, and our courts ·could not afford this relief.

The plaintiff would have the right under the law of that country, by subsequent suits, to recover for any damages that might arise out of the injury after the first judgment was rendered, while in our courts the whole sum must be adjudged in one proceeding.   After a judgment in Texas for all damages, existing and prospective, the plaintiff might, in the courts of that country, recover for injuries subsequently developed which might be included in the judgment of the Texas court, and thus a double recovery be had.

Under the laws of Mexico the defendant would be liable for injuries to plaintiff's family or to third persons growing out of the injury inflicted upon plaintiff.   What this might comprehend we do not know; it might include a part of what would be adjudged in the judgment in a Texas court or it might not.   At any rate it appears to be a different right to anything known to the laws of Texas, and in favor of persons who could not, under our law, maintain any action for the alleged injury.

If the plaintiff should recover from his injuries, to the extent that he would become able to pursue an occupation suitable to his education and social position, the defendant would have the right under that law to have the payment of damages awarded for diminished capacity to   earn money reduced by the amount that plaintiff could earn in such employment.   In this State no judgment could be rendered which would secure that right, but the judgment must be entered for all probable future losses; hence, the future earnings, no matter how great they might prove to be, could not go to reduce the damages already paid under such judgment as would be rendered in Texas.   How this right would be secured in Mexico we cannot see unless payments were required by the judgment to

be made in installments, or that future inability to earn money not being considered upon the first trial, the matter would be settled in subsequent suits to recover for such damages. In any event it is a right of the defendant which no court of this State can secure by its judgment.

There are many points of dissimilarity between the laws of Mexico, as proved in this case, and the law of this State applicable to the same subject, which we have not mentioned, but those noticed are sufficiently numerous and material to show that the courts of Texas should not undertake to adjudicate the rights of parties, arising under those laws, for torts committed in that country; indeed, as we have shown, they could not properly determine the rights of parties arising under those laws. The cases of Railway v. Richards, 68 Texas, 375, and Railway v. McCormick, 71 Texas, 660, were actions for damages caused by the death of the injured party, but they were decided upon the same principles that apply to this case, that is that the courts of Texas would not entertain such actions if founded upon a law which is materially different from the law of this State. The cases cited are sustained by the weight of authority and are conclusive of the question in this State.

There are other sufficient reasons why our courts should not attempt to enforce the Mexican law in cases like this. The reason which influences the courts of one State to permit transitory actions for torts to be maintained therein, when the right accrued in a foreign State or country, is that the defendant, having removed from such other State or country, cannot be subjected to the jurisdiction of the courts where the cause of action arose, and as matter of comity, but more especially to promote justice, the courts of the place where he is found will enforce the rights of the injured party against him, because it would be unjust that the wrongdoer should be permitted, by removing from the country where he inflicted the injury, to avoid reparation for the wrong done by him. In this case there has been no removal of the person or property of the defendant. Its railroad remains, as it was at the time of the injury, within the jurisdiction of the courts of Mexico, and it is liable to suit there according to the laws of that country. The reason for permitting the action to be prosecuted in our courts does not obtain in this case; the plaintiff has voluntarily resorted to the jurisdiction of our courts when his rights could be better adjudicated in Mexico.

The Mexican National Railroad is an important public highway in the Republic of Mexico, by which the commerce of that country is largely carried on with our people. Every judgment for damages rendered against it reduces its revenues, which must of necessity be restored through its charges for transportation of persons and property, and in the main must be paid by that people. It is but just, and perhaps necessary, to a proper maintenance of that means of transportation that the country in which it is operated should determine the charges to be enforced against it. If Texas should open her courts to all persons that may be injured in Mexico in the management of that railroad and others, it may seriously affect the means of commerce between this State and that Republic. Thus it be--

comes a matter of public concern, and a proper subject for our considera-tion in this connection, in view of the fact that the railroad company is still subject to that jurisdiction. Justice does not demand the exercise of the jurisdiction, and comity between the governments of this State and Mexico would seem to forbid that we should do so. (Thomas v. Gardner, 14 Johns, 134; Johnson v. Dalton, 1 Cow., 543.)

There are at this time two systems of railroads extending from the borders of this State into Mexico for several hundred miles each, and as that country shall hereafter develop, and commerce between the two countries become more extended, we may expect other lines to be con-structed in the same direction. If our courts assure to adjust the rights of parties against those railroads growing out of such facts, as in this case, we will offer an invitation to all such persons, who might prefer to resort to tribunals in which the rules of procedure are more certainly fixed and the trial by jury secured, to seek the courts of this State to enforce their claims. Thus we would add to the already overburdened condition of our dockets in all the courts, and thereby make the settlement of rights orig-inating outside the State, under the laws of a different government, a charge upon our own people. If the facts showed that this was neces-sary in order to secure justice, and the laws were such as we could prop-erly enforce, this consideration would have but little weight, but we feel that it is entitled to be considered where the plaintiff chooses this juris-diction as a matter of convenience and not of necessity.

We conclude that the District Court and the Court of Civil Appeals erred in not dismissing this case under the proof made, for which error the judgments of both of said courts are reversed and this cause is dis-missed.

*Reversed and dismissed.*