MEXICAN CENT. RY. CO., Limited, v. CHANTRY.

(Circuit Court of Appeals, Fifth Circuit. January 10, 1905.)

No. 1,294.

1. INJURY TO EMPLOYÉ—RES JUDICATA—PROCEEDINGS IN MEXICO.

In an action for personal injuries received by plaintiff in Mexico while in the employ of defendant railroad company, the transcript of proceedings in a Mexican court showing, prima facie at least, in connection with other evidence, that, when the action was instituted, proceedings in Mexico had been had, having the force of res judicata, settling adversely to plaintiff his right to recover, should be admitted in evidence.

2. SAME—NEGLIGENCE OF FELLOW SERVANT—LAWS OF MEXICO.

Whether the common-law doctrine as to nonliability of employers to a servant for injuries from the negligence of fellow servants prevails in Mexico is a question of fact, to be proved like other facts, in an action

for personal injuries received by plaintiff in Mexico. while in defendant's employ, through the negligence of a fellow servant.

Shelby, Circuit Judge, dissenting from that part of the judgment directing a new trial, holding that the trial court should be directed to dismiss the case on the authority of Slater v. Mexican Nat. R. Co., 194 U. S. 120, 24 Sup. Ct. 581, 48 L. Ed. 900.

In Error to the Circuit Court of the United States for the Western District of Texas.

This is an action brought in the court below by J. M. Chantry, defendant in error, against the Mexican Central Railway Company, Limited, plaintiff in error, to recover damages for injuries received at Canitas, Mexico, on or about the 27th of March, 1902; said Chantry then being engaged in his employment as a freight conductor for the railway company. Plaintiff's original amended petition in the court below sets out all the circumstances attendant upon his injuries, and, in addition, such alleged articles of the Mexican law governing cases of the kind as were deemed sufficient to show a full case for recovery.

Defendant's first amended original answer contains an exception to the plaintiff's petition as insufficient, a general denial of the same, a plea of contributory negligence, and, in addition, the following:

"(1) Defendant pleads in bar of plaintiff's recovery herein a former judgment which is conclusive and binding upon the plaintiff, and which is conclusive of his right to recover herein under the Constitution and laws of Mexico. That in the courts of Mexico, the same having jurisdiction of the subject-matter and parties, a certain adjudication was had, as shown by the attached certified copy and its translation, wherein the court judicially determined that plaintiff was injured by reason of an accident, and that no one was to blame therefor. That, under the Constitution of Mexico, to wit, article 24, and other laws of the republic of Mexico, said decision of said court is binding, and precludes the recovery by plaintiff of any damages in any civil suit by him instituted, and said article is as follows: 'Art. 24. Ningun juicio criminal puede tener mas de tres instancias. Nadie puede ser juzgado dos veces por el mismo delito, ya sea que en el juicio se le absuelva o se le condene. Queda abolida la practicia de absolver de la instancia.' The same, in effect, when translated, is as follows: 'Art. 24. No criminal case can have more than three phases. No one can be tried twice for the same offence, be he absolved or condemned. All former laws on the subject are hereby abolished.' That under the construction placed upon said article by the court in said republic, as to the decision of said court as set forth in the attached certified copy, and the translation thereof also attached hereto, this plaintiff has no cause of action under the laws of the republic of Mexico; the rights of the parties hereto by virtue of said finding of the court being held as finally adjudicated under said laws. Wherefore plaintiff should not be permitted to recover herein, when, under the laws of said republic, he has no cause of action, and cannot recover on account of injuries sustained as claimed by him in his said petition, and wherefore defendant prays that it go hence and recover its costs."

To the answer was attached a copy in Spanish, and a full translation thereof into English, of an alleged adjudication in the courts of Mexico in the proceedings instituted against the Mexican Central Railway Company to inquire into and adjudicate the question of fault by reason of the derailment of the railway train at Canitas on the 27th day of March, 1902, in which wreck the American, J. M. Chantry, was hurt. The original and the translation show that the court adjudged that the injuries sustained by Joseph Chantry were caused in an accidental manner, without culpability to any person whatever.

To the foregoing plea the plaintiff filed general and special exceptions, and answer as follows:

"(1) Because it is not certified to by the proper person.

"(2) Because there is no certificate accompanying same, as required by law.

"(3) Because it shows on its face that same is not a judgment of any court of record, but is only the testimony taken by the examining court, and is criminal in its nature, under a proceeding instituted by the officials of the

Mexican government to determine the criminal liability of the defendant and its employés, and did not include plaintiff's right to recover damages in this case.

"(4) Because it shows on its face that plaintiff, J. M. Chantry, was not before the court, but one MacChantry.

"(5) Because said instrument shows on its face that it was a criminal proceeding, and is not a judgment for or against plaintiff on his rights, under the law, to recover damages for his injuries.

"(6) Because neither plaintiff nor defendant was a party to such proceeding, and for this reason neither were bound by said judgment, if same is a judgment.

"Wherefore plaintiff prays that said plea be stricken from the record.

"Patterson & Wallace,
"Attorneys for Plaintiff.

"And for further special answer hereto, comes now said plaintiff, by his attorneys, and says that, by virtue of the laws of the republic of Mexico, it is necessary to have an investigation as to the criminal responsibility of all accidents that occur in said republic; that in no event does a judgment in a criminal case bar plaintiff from his rights to a civil suit for his damages, as is shown by the attached copy of the laws of the republic of Mexico, which is here referred to and made part of this answer.

"Wherefore plaintiff prays judgment of the court.

"Patterson & Wallace,
"Attorneys for Plaintiff."

And further appended numerous alleged articles of the law of Mexico tending to sustain the views of the law as expressed in the exceptions.

On the trial of the case, among other witnesses for the defendant, Mr. J. M. Amador testified as follows:

"My name is J. M. Amador. I live at Ciudad Juarez. I am a lawyer. I am a practicing attorney. I am with Mr. Siijas. We have a company for practicing law on the other side. To practice civil and criminal law. I am a lawyer since 1885. I held the position of prosecuting attorney for more than 5 years at Zacatecas State, at the city of Zacatecas, and from 20th of November, 1900, on this other side, Chihuahua State federal court. Five years I was prosecuting attorney in the state of Zacatecas. I saw this paper. That is the court I refer to. I belonged to the same court. I am familiar with the law of Mexico with reference to criminal and civil liability for criminal acts. I have examined this paper—the Spanish copy. That is a copy of the record. This seal I know perfectly. I have read over the judgment of the court as shown by those records. Yes, sir; that is the decision of the court. That is what we call it in Spanish—office of Fomento. That means that there is no crime against any person to prosecute. Civil responsibility depends upon criminal liability. Consequently the party may be criminally liable and not civilly liable, and vice versa; but when judgment is entered by the court, showing that there is no criminal responsibility, that eliminates entirely the civil responsibility. When the judgment of the court states that there is no person responsible. For instance, a man kills another. If the defendant is found guilty of the charge, he also is civilly responsible for the murder committed. This is judgment rendered both civilly and criminally. But if judge finds, in investigation of the case, that he has no case, or nothing to punish the man criminally for, then he is discharged for lack of proof, but then this man is liable to civil responsibility; but when no crime is proven against him, as in this case, the judgment of the court is not similar to the judgment then. In that case there is no civil responsibility whatever. This book is printed by the editor of the official bulletin by order of the Minister of Justice—publico. It is an official book. Where the court finds that no one is responsible, and that the injuries are a result of an accident, then no civil suit can be instituted, but on the other hand, if the court finds that there was not enough evidence before him to hold anybody for criminal charge, then that would not prevent the civil action, because the party was simply absorbed in the criminal case. I refer to articles 326 and 327 of the Penal Code. I will read them: 'Art. 326. No person can be charged with civil liability upon an act or omission contrary to a penal law, unless it be proven: That the party sought to be charged

usurps the property of another; that without right he caused, by himself, or by means of another, damages or injuries to the plaintiff; or that, the party sought to be charged being able to avoid the damages, they were caused by a person under his authority.' I will read article 327: 'Art. 327.' Whenever any of the conditions of the preceding article are established, the defendant shall be civilly liable, without regard to whether he be absolved or condemned to criminal liability.' In reference to the word 'absolved,' I can explain that, if you want. If the decision of a court says that the man is not criminally responsible (that is, if some of the judges, officials, would say that there was not enough evidence presented against this man), there would be found no criminal liability; that is to say that, as to the accident, that there is not sufficient proof to condemn the man, and still there is civil responsibility. Where the judgment of the court finds that there is no one to blame, and that it was the result of an accident, no civil action can be brought upon that cause. There is no question about that. Some of the states and territories in the republic of Mexico have two federal courts, but most of them have only one. When persons live in other parts, different from the place where the court is, the court recommends investigation, through the other courts—other federal districts of said court. This is the general code for the federal proceeding in Mexico: 'When it is necessary to execute judicial proceedings out of the place where the suit is pending, must be charged the complaint by means of requisition papers to the federal judge, or in fault of this to the common judges of the place where the said proceedings must be practiced. It must be implied in the form of requisition papers, when the proceeding is recommended to an equal or superior judge, and that the form of requisition must be addressed to any inferior.' That is the provision under which the court at Zacatecas acted in taking the testimony at Aguas Calientes. That is the procedure in the Mexican courts. Where the main court calls upon any minor court to make an investigation and return to it the testimony, the first court, or chief court, finds the judgment. The matter is determined by the first court, and the first court renders the judgment, submitting to the minor court the duty of discovering all testimony, but this second court only gets jurisdiction so far as this first court orders. Article 24 of the Constitution has reference to this same matter: 'No criminal case can be of more than three phases, no one can be tried twice for the same offense, be he absolved or condemned. All further laws on the subject are hereby abolished.' The courts in Mexico have three phases. In some states of the republic they have only two, but in only a few states. The Constitution says that no case shall have but three phases. The first phase is what is known as 'first instance.' Then it will go to a higher court. That will be second phase. Then we go up to the highest court. That will be the third phase. That will be the first instance, and the second will be the appeal, and the third by publication. Case first into court is the first instance—for instance, the first instance usually starts in the 'judge of letters,' the district court. The second instance is the circuit court. The Constitution says that no case will be of more than three phases, and the federal court shall have only two phases. In a case where it begins at the circuit court, will go up to the Supreme Court, but not where it begins in the district court. This case began with the district court. It began with the district court of Zacatecas, and then went to the circuit court. Here is the order affirming it: 'In the investigation held by your court relative to injuries caused to MacChantry by a Mexican Central train, the acting magistrate has accorded on the 2d of the present month, the following: With the foundation of the 2d paragraph of article 60, of the preliminary title reformed from the Federal Code of Proceedings revised, and there not appearing merits to place responsibility, I order the remittance of the originals to the District Court at once. To whom it may concern. All of which I transfer to you in compliance with orders and for the effect herein expressed, remitting to you the investigation in 11 pages.' That is it exactly. That is the final judgment of the circuit court."

Cross-examination:

"I think Mr. Chantry had something to do with that proceeding. He would not necessarily have to be a party to it, before it would be binding upon him.

I am testifying about the law. I get the law in Mexico. It is not necessary for him to be a party.

"(Here the plaintiff read the following article:)

" 'Art. 308. The civil responsibility cannot be declared except at the instance of the party entitled to recover.'

"That is right. Q. Then, if he is not a party to these proceedings, he would not be bound by it? A. No, sir; that is not the same.

"(Here plaintiff's counsel reads the following:)

" 'Art. 327. Whenever any of the conditions of the preceding article are established, the defendant shall be civilly liable, without regard to whether he be absolved or condemned to criminal liability.'

" 'Art. 323. If the blows or wounds cause the loss of any member indispensable for work, or the person wounded or struck remain other wise crippled, lamed or deformed by that circumstance, he shall have the right not only to the damages and injuries but also to the sum which the judges may determine as extraordinary indemnity, considering the social position and sex of the person and the part of the body remaining crippled, lamed or deformed.

" 'Art. 324. The gain which the injured party fails to earn during his inability to work shall be computed by multiplying the sum which he formerly earned per day by the number of days of his disability.'

" 'Art. 326. No person can be charged with civil liability upon an act or omission contrary to a penal law unless it be proven that the party sought to be charged usurped the property of another; that without right he caused, by himself or by means of another, damages or injuries to the plaintiff; or that the party sought to be charged being able to avoid the damages, they were caused by a person under his authority.

" 'Art. 327. Whenever any of the conditions of the preceding article are established, the defendant shall be civilly liable without regard to whether he be absolved or condemned to criminal liability.'

" 'Art. 325. A pardon shall in no case extinguish the civil responsibility, nor the actions to enforce it, nor the legal rights which third persons may have acquired.'

" 'Art. 366. Limitation is interrupted by the criminal proceedings until final judgment is pronounced. This done, the term of limitation commences to run anew.'

"No other court in the district has jurisdiction to try railroad cases, except the federal court. These proceedings originated in the district court at Zacatecas. These papers are on file at Zacatecas. These papers belong to the Zacatecas court, and will stay at Zacatecas court. I am not judge of any court. I am not giving my opinion. I am explaining the law of Mexico. There are two different kinds of crime—private and public crimes—and in the public crimes the prosecuting attorney will make charge, and in private crimes the party. This was public crime. Not necessary to have the complaint. In private crimes it is necessary to have complaint of the crime, but in public crimes the minister of the public will be the one to prosecute. He is prosecuting attorney in this case. There are two parties to a suit in Mexico—the plaintiff and defendant.

"Redirect examination:

"I have read over this instrument, it is in due and legal form, according to the judgment of the court. That is a valid and binding judgment, under the law, and is to be respected in the courts. Under that judgment, no civil suit can be instituted upon that cause of action. There is no question about that."

At this stage defendant produced a certified copy of proceedings and judgment attached to his answer, and offered the same in evidence. "The court permitted said instrument to be introduced in evidence only in so far as it tended to contradict the plaintiff, but refused to permit the same in evidence as a bar or as an estoppel, or in any way as affecting plaintiff's right to sue to recover herein. Defendant then and there offered to prove by any number of witnesses, and through competent proof, that under the laws of Mexico such judgment was and is final and conclusive, and that the same would bar plaintiff's recovery in any civil suit involving the same cause of action in the courts of the republic of Mexico, but the court then and there refused to hear further proof, holding that said judgment would in no way be a bar or pre-

vent the recovery of plaintiff in the courts of this country, to which action of the court in refusing to permit said instrument to be offered in evidence as a bar and estoppel, and in refusing to hear proof to show that plaintiff, under the laws of Mexico, had now, since the entry of said judgment, no cause of action, defendant then and there, in open court, excepted.".

There was verdict and judgment ·for the plaintiff, and the railway company sued out this writ of error.

. F. A. Falvey and Waters Davis, for plaintiff in error.

Geo. E. Wallace, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

After stating the case as above, the opinion of the court was delivered by PARDEE, Circuit Judge.

To recover in this transitory action for the alleged personal injuries, it must be shown that the laws of Mexico give a right of action. Foreign laws are matters of fact, and, like other facts, must be pleaded and proved. Liverpool & G. W. S. Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788. Assuming that in this case it has been sufficiently pleaded and proved that under the laws of Mexico the plaintiff is given a civil right of action to recover from the defendant company for the injuries in question, we still meet the proposition that, prior to the suit brought, and the trial of the same, said right of action had been lost or extinguished by legal proceedings in the courts of Mexico; and the question arises whether such proceedings, sufficiently pleaded and proved, will defeat the cause of action sued on. After much consideration, we conclude, on principle and authority, that the rule declared in McLeod v. Connecticut & P. R. Co. (Vt.) 6 Atl. 648, as follows: "Although a civil right of action acquired or a liability incurred in one state or country for a personal injury may be enforced in another to which the party in fault may have removed or where he may be found, yet the right of action must exist under the laws of the place where the act was done or neglect accrued. If no cause or right of action for which redress may be had exists in the country where the personal injury was received, then there is no cause of action to travel with the person claimed to be in fault, which may be enforced in the state where he may be found"—is a correct statement of the law of the case.

The record shows that the plaintiff in error duly pleaded proceedings in Mexico under the laws of Mexico had prior to the institution of the present suit, by and through which whatever right the defendant in error may have had to prosecute his suit in any jurisdiction was extinguished. The plea seems to be good, and, so far as the record shows, was so treated by the trial court. On the trial of the case the evidence of Amador, Mexican lawyer, made a prima facie case to the effect that, under the laws of Mexico, by proceedings of the kind and nature described in the certified transcript attached to the plea, the defendant in error's right of action was extinguished. In connection with this evidence, the certified transcript of the proceedings in the courts of Mexico in relation to the railroad wreck in which the defendant in error was injured, and the finding by said courts that in such wreck no culpability was attached to any one, was offered in evidence,

but was rejected by the court for the purpose for which it was offered, and admitted only for the limited purpose of contradicting the oral evidence of the defendant in error. This transcript, in connection with the other evidence, would have shown, prima facie at least, that, at the time the present suit was instituted, proceedings in Mexico had been had in the nature of, and having the force of, res judicata, settling the defendant in error's right to recover adversely to him. Certainly, if no cause of action existed in Mexico at the time this suit was brought, the same ought not to be maintained. Holding this view, we are of opinion that the trial judge erred in rejecting the evidence offered, and that for this reason the judgment of the court below should be reversed.

We do not think it necessary to pass on other points raised on this writ of error, further than to say that whether or not the common-law doctrine as to the nonliability of employers to one servant for injuries resulting from the negligence of a fellow servant prevails in Mexico is a matter of fact, to be proved like other facts. See, in this connection, Mexican Central Ry. Co. v. Sprague, 114 Fed. 544, 52 C. C. A. 318.

The judgment of the Circuit Court is reversed, and the cause is remanded, with instructions to grant a new trial.

SHELBY, Circuit Judge. I concur in the judgment of reversal, but, as I place it on grounds fatal to the plaintiff's cause of action, it seems proper to briefly state them:

This is a common-law action for damages for personal injuries received by the defendant in error (the plaintiff below) while in the service of the plaintiff in error (the defendant below). It is alleged in the declaration that, while engaged in the service of the defendant as conductor, the plaintiff was injured by the defendant's servants, whose negligence caused him to be knocked down between the cars, and that his right foot was caught under the wheels of the cars and mangled to such an extent as to render him a cripple for life. The accident occurred in Mexico, and the plaintiff, in his pleadings, sets out the laws of Mexico upon which he bases his right of recovery. For convenience of reference, these statutes, so far as is necessary, are printed in the margin.[1] They make railway companies civilly liable for the negligence, imprudence, and want of capacity of their servants. Negligence is made a crime, and civil liability is fixed, which requires the payment of all the damages caused to the injured party. The judges who take cognizance of the suit for damages are required to endeavor to have the parties agree on the amount of damages and "terms of payment." The measure of damages is fixed by the statute. The guilty defendant must pay all the expenses of cure, the damages the plaintiff may have suffered, and that which he may fail to gain during the time which he may not be able to do the work by which he subsisted. If the plaintiff recovers so that he can do other work (different from his accustomed work), "the civil responsibility shall be reduced to paying him the sum which his ability to earn in his new employment falls short of his daily earnings

1. See note at end of case.

in his former occupation." It is clear that, if the plaintiff had sued in Mexico, a judgment for the plaintiff would have required the defendant to pay him at stated times such sums as he had been earning before the injury, and that if the plaintiff recovered so that he could do other work appropriate to his education, etc., the payments required of the defendant would be reduced by the amount the plaintiff earned in his new vocation. Article 322, note. It seems, also, that by proceedings subsequent to the judgment the defendant may be relieved of the liability fixed by the judgment, and that such liability may "be expressly left to the charge of the public treasury." Articles 331, 334, note. There are other differences between the lex loci delicti and the lex fori, not necessary to be mentioned here, which are elaborately stated by the Supreme Court of Texas in refusing to administer and enforce the Mexican statutes. Mexican National Ry. Co. v. Jackson, 89 Tex. 107, 33 S. W. 857, 31 L. R. A. 276, 59 Am. St. Rep. 28. This is an action at law for damages for a statutory tort. No room is left for presumption as to what laws prevailed in Mexico, for the plaintiff presents the statutes making the alleged negligence a tort, and prescribing the penalty, and limiting in certain points the defendant's liability by providing the terms and character of the judgment. It is not a judgment for a lump sum, but for periodical payments. These payments may be reduced by a change in the physical condition and occupation of the plaintiff, and by procedure after judgment the defendant may be relieved of the liability; it being made a charge on the public treasury. It is clear that in this suit no such judgment can be rendered by the Circuit Court sitting in Texas. It is a general rule that a civil right of action or liability incurred in one country for a personal injury may be enforced in another country to which the party in fault may have moved, or where he may be found, if the right of action exists under the laws of the place where the act was done or the neglect occurred. But the rule does not apply to statutory torts, where the statute, in creating the liability, at the same time creates a mode of redress peculiar to that state, by which alone the wrong is to be remedied. Minor on Conflict of Laws, § 194. I think the principles announced by the Supreme Court in Slater v. Mexican National R. Co., 194 U. S. 120, 24 Sup. Ct. 581, 48 L. Ed. 900, are conclusive of this case. That was a suit brought in the Circuit Court in Texas for damages for the negligence of the railroad company in causing the death of William H. Slater. The statutes of Mexico and those of Texas both give an action for wrongfully causing death, and the court said:

"Of course, there is no general objection of policy to enforcing such a liability, although it arose in another jurisdiction."

In affirming the judgment of the Circuit Court of Appeals, which directed the dismissal of the action (115 Fed. 593, 53 C. C. A. 239) the Supreme Court said:

"As Texas has statutes which give an action for wrongfully causing death, of course there is no general objection of policy to enforcing such a liability there, although it arose in another jurisdiction. But when such a liability is enforced in a jurisdiction foreign to the place of the wrongful act, obviously that does not mean that the act, in any degree, is subject to the lex fori, with regard to either its quality or its consequences. On the other hand, it equally

little means that the law of the place of the act is operative outside its own territory. The theory of the foreign suit is that, although the act complained of was subject to no law having force in the forum, it gave rise to an obligation—an obligatio—which, like other obligations, follows the person, and may be enforced wherever the person may be found. But as the only source of this obligation is the law of the place of the act, it follows that that law determines not merely the existence of the obligation, but equally determines its extent. It seems to us unjust to allow a plaintiff to come here, absolutely depending on the foreign law for the foundation of his case, and yet to deny the defendant the benefit of whatever limitations on his liability that law would impose. * * * We may lay on one side, as quite inadmissible, the notion that the law of the place of the act may be resorted to so far as to show that the act was a tort, and then may be abandoned, leaving the consequences to be determined according to the accident of the place where the defendant may happen to be caught. * * * It is sufficiently obvious from what has been quoted that the decree contemplated by the Mexican law is a decree analogous to a decree for alimony in divorce proceedings—a decree which contemplates periodical payments, and which is subject to modification from time to time as the circumstances change. The present action is a suit at common law, and the court has no power to make a decree of this kind contemplated by the Mexican statutes. * * * But we are of opinion, further, that justice to the defendant would not permit the substitution of a lump sum, however estimated, for the periodical payments which the Mexican statute required. * * * Evidently the Texas courts would deem the dissimilarities between the local law and that of Mexico too great to permit an action in the Texas state courts. Mexican National Ry. v. Jackson, 89 Tex. 107, 33 S. W. 857, 31 L. R. A. 276, 59 Am. St. Rep. 28; St. Louis, Iron Mountain & Southern Ry. v. McCormick, 71 Tex. 660, 9 S. W. 540, 1 L. R. A. 804. The case is not one demanding extreme measures, like those where a tort is committed in an uncivilized country. The defendant always can be found in Mexico, on the other side of the river; and it is to be presumed that the courts there are open to the plaintiff, if the statute conferred a right upon them, notwithstanding their absence from the jurisdiction, as we assume that it did, for the purposes of this part of the case."

While the facts of the two cases are different—one being for damages for wrongfully causing death, and the other for wrongfully inflicting personal injuries—as both causes of action depend absolutely on foreign statutes, I cannot avoid the conclusion that the principles announced in the former case are equally controlling in the latter. In each case the judgment or decree provided for by the statute prescribes periodical payments that may be reduced by subsequent events. The statutory judgment in each case is such that "in an action at common law the court here has no power to make." The procedure here is such that the defendant in this case, as in the Slater Case, would be deprived of substantial rights secured to it by the foreign statutes on which the suit is based. The opinion and judgment of the Supreme Court is, of course, controlling on this court; and it seems to me that, if we permit this case to proceed to judgment for the plaintiff in the court below, we ignore the principle announced—that it is "unjust to allow a plaintiff to come here, absolutely depending on the foreign law for the foundation of his case, and yet to deny the defendant the benefit of whatever limitations on his liability that law would impose." Neither can I reconcile the direction to proceed to try this case again under the Texas law, allowing a verdict and judgment for a lump sum only, with the opinion quoted—that "justice to the defendant would not permit the substitution of a lump sum, however estimated, for the periodical payments which the Mexican statute required." I am forced,

therefore, to the conclusion that the opinion of the Supreme Court, which requires the plaintiff to seek his remedy "on the other side of the river," is just as applicable to this case as to the Slater Case.

The Circuit Court, I think, should be directed to dismiss the case. I dissent, therefore, from that part of the judgment which directs a new trial.

### NOTE.

The following are the pertinent Mexican statutes set out in his pleadings by the plaintiff:

"Art. 184. Companies [railway] are liable for all faults or accidents which occur through tardiness, negligence, imprudence, or want of capacity of their employés."

"Art. 304. The civil liabilities arising from an act or omission contrary to a penal law consists on the obligation imposed on the party liable, to make (1) restitution, (2) reparation, (3) indemnization, and (4) payment of judicial expenses.

"Art. 305. Reparation comprehends: The payment of all the damages caused to the injured party, to his family or to a third person, for the violation of a right which is formal, existing and not simply possible, if such damages are actual, and arise directly and immediately from the act or omission complained of or there be a certainty that such act or omission must necessarily cause, as a proximate and inevitable consequence."

"Art. 305. Indemnization imports: The payment of damages, that is, of that which the party fails to enjoy as a direct and immediate consequence of an act of omission by which a formal, existing and not merely possible right is attacked, and of the value of the fruits of the thing usurped and already consumed, in the cases in which the same should be done comfortably with civil right.

"Art. 306. The condition required by the two preceding articles, that the damages and injuries should be actual, shall not prevent that the indemnization of subsequent damages and injuries be exacted by a new suit, when they shall be accrued; if they proceed directly from, and as a necessary consequence of the same act or omission from which resulted the previous damages or injuries.

"Art. 307. The payment of judicial expenses embraces those absolutely necessary, which the injured person incurs for the purpose of investigating the act or omission which causes the criminal proceeding and to avail himself of his rights in such proceeding or in civil suit."

"Art. 313. The judges who take cognizance of suits based upon civil responsibility shall endeavor that the amount and terms of payment be fixed by agreement of the parties. Failing in this, the provisions of the following article shall be observed."

"Art. 321. In case of blows or wounds, from which the injured party does not remain a cripple, lamed or deformed, he shall have the right that the responsible party pay all his expenses of cure, the damages he may have suffered, and that which he may fail to gain during the time which, in the opinion of competent persons, he may not be able to do work by which he subsisted. But it is essential that the inability to work should be the direct result of the wounds or blows, or be a cause which is [the] immediate effect of such blows or wounds.

"Art. 322. If the inability of the injured person to devote himself to his accustomed work be permanent, from the moment in which he shall recover and can properly devote himself to other and different work, which may be lucrative and appropriate to his education, habits, social position and physical constitution, the civil responsibility shall be reduced to paying him the sum which his ability to earn in his new employment falls short of his daily earnings in his former occupation.

"Art. 323. If the blows or wounds cause the loss of any member not indispensable for work, or the person wounded or struck remain otherwise crippled, lamed or deformed, by that circumstance, he shall have the right not only to the damages and injuries, but also the sum which the judge may determine

as extraordinary indemnity, considering the social position and sex of the person and the part of the body remaining crippled, lame or deformed.

"Art. 324. The gain which the injured party fails to earn during his inability to work, shall be computed by multiplying the sum which he formerly earned per day by the number of days of his inability.

"Art. 325. The provisions of the foregoing articles for computing the civil responsibility for wounds or blows shall be applied to all other cases where, in the violation of the penal law, a person may cause the illness of another, or may have placed him under disability to work.

"Art. 326. No person can be charged with civil liability upon an act or omission contrary to the penal law, unless it be proven: That the party sought to be charged usurped the property of another; that without right he caused, by himself or by means of another, damages or injuries to the plaintiff, or that the party sought to be charged being able to avoid the damages, they were caused by a person under his authority.

"Art. 327. Whenever any of the conditions of the preceding articles are established, the defendant shall be civilly liable, without regard to whether he be absolved or condemned to criminal liability."

"Art. 330. In order that masters may be held civilly liable through their clerks and servants, according to the provisions of articles 326 and 327, it is an indispensable condition that the act or omission of the clerks or servants causing the liability shall occur in the service for which they are employed.

"Art. 331. Under the condition of the preceding article, those liable are: Railroad companies."

"Art. 331.—Limitation. The various actions by which the civil responsibility may be demanded, or the execution of the final judgment declaring that such responsibility has been incurred by the accused may be asked, shall be extinguished according to the terms and in the manner provided by the Civil Code, according to the nature of the demand and the subject matter treated of."

"Art. 364. Amnesty shall not extinguish the civil responsibility, nor the action to exact it, nor the legal rights which third persons may have acquired. Nevertheless, when the responsibility may not yet have been made effective, and the demand is not for restitution, but for the reparation of damages, of indemnity for injuries, or for payment of judicial expenses, the guilty person shall remain free from such obligations only when it is declared in the amnesty and they are expressly left to the charge of the public treasury."