## JOSEPH SOKEL

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1904—Rehearing denied December 8, 1904.*

1. BIGAMY—*witness should not be allowed to state that parties "were married."* In a prosecution for bigamy, whether the parties were married is a question for the jury, to be determined from the evidence as to what was done in the way of entering into the marriage relation, and it is error to permit a witness to state that they "were married" by a rabbi on a certain occasion when he saw them together.

2. SAME—*when error in admitting a statement of witness will not reverse.* Error in permitting a witness in a bigamy case to state that the parties "were married" on a certain occasion is not ground for reversal where the witness subsequently states in detail what occurred at the time, which proves to be *prima facie* evidence of a legal marriage.

3. SAME—*when statement that party had been divorced is of no force.* A declaration by one accused of bigamy that he had been divorced from his first wife by a rabbi in a foreign country is of no probative force, where there is nothing to show that the rabbi had jurisdiction to grant divorces.

4. SAME—*when alleged record of marriage is not admissible.* A paper purporting to be a transcript from the records of marriages reported to the board of health, showing the marriage of a person having the same name as the defendant to a certain woman, is not admissible in a bigamy prosecution, in the absence of identification and of proof that the record is one required by law to be kept; but its admission is not prejudicial if the marriage is otherwise proven.

5. SAME—*what sufficient to prove a prima facie valid first marriage.* In a prosecution for bigamy, proof of a public, ceremonial first marriage in a foreign country, performed by one in holy orders, followed by cohabitation of the parties as man and wife, raises a presumption that the accused was capable of contracting marriage under the laws of that country.

6. SAME—*accused claiming restriction on right to marry must prove it.* Defendant in a prosecution for bigamy who claims that his first marriage in a foreign country falls within restrictions imposed by the laws of such country has the burden of proving his claim.

7. EVIDENCE—*it is not presumed that a foreign country has adopted our statutes.* There is no presumption that a foreign coun-

try has adopted the statute of Illinois concerning lawful marriageable age.

8. CONSTITUTIONAL LAW—*what not a violation of right to meet witnesses face to face.* The constitutional right of one accused of crime to meet witnesses face to face has no application to documentary evidence, and is not violated in a prosecution for bigamy by introducing a paper, signed by witnesses, which constitutes part of the ceremonial marriage under the law of the place where the marriage took place.

9. WITNESSES—*when testimony of a child is properly admitted.* If the preliminary examination of a child shows that she attends school, knows the difference between truth and falsehood, that her oath obliged her to tell the truth and that she would be punished if she failed to do so, it is not error to admit her testimony, the weight thereof being a matter for the jury.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

JOHN A. SILHA, (CHARLES A. CHURAN, of counsel,) for plaintiff in error.

H. J. HAMLIN, Attorney General, CHARLES S. DENEEN, State's Attorney, and FERD. L. BARNETT, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of the crime of bigamy upon an indictment charging that in the year 1885, in Safed, in Palestine, in the empire of Turkey, he lawfully married one Esther Schocherts, and afterward, on March 9, 1901, in the city of New York, while the said Esther was still living, unlawfully married Rachel Schur.

By the assignment of errors the correctness of various rulings during the trial is questioned, as well as the sufficiency of the evidence to warrant a conviction. The points upon which plaintiff in error relies are very fully presented by his counsel in their brief and argument, to which there

is a merely perfunctory reply on the part of the People, having neither the form nor the substance of a brief and not containing any citation of authority or any allusion to the most important questions in the case. It is apparent that several errors were committed in the course of the trial, but our examination of the record has led us to the conclusion that none of them call for a reversal of the judgment, and that the evidence adduced upon the trial warranted the conviction.

The first witness examined was Israel Levy, who testified that he knew the defendant and Esther Schocherts in Safed, Palestine, in the empire of Turkey, and saw them together in that place in June or July, 1885. He was then asked what the occasion was that brought them together, and answered that the rabbi married them. On objection the court refused to strike out the answer, and this was error. The question whether the defendant married Esther Schocherts was the principal fact in issue which the jury were empaneled to try, and the answer substituted the conclusion of the witness for the finding of the jury on that question. The question whether the parties were married was to be determined by the jury from the evidence as to what was done in the way of entering into a marriage contract, and the ruling permitted the witness to usurp the province of the jury. (*Chicago and Alton Railroad Co.* v. *Springfield and Northwestern Railroad Co.* 67 Ill. 142.) The witness, however, afterward detailed what occurred at the time, which, in our opinion, was *prima facie* evidence of a legal and valid marriage, and the testimony was wholly uncontradicted. He testified that he knew the parties in Safed; that he was between thirteen and fourteen years old; that he went to the wedding with his brother, who boarded with Esther Schocherts' father; that there was a ceremony performed by a rabbi in the presence of a large crowd in Safed, in the yard of the synagogue; that they brought a canopy and placed under it the groom and bride; that the rabbi

called upon two persons and made them witnesses, that they should see and bear witness that the defendant was married to Esther and must see the way he put the ring on her finger; that the two witnesses bore witness to the marriage contract and signed a paper produced at the trial; that he saw the paper under the canopy and the rabbi read it; that he knew the witnesses and saw them sign it; that after the wedding they went to the house and there was a festive occasion, eating, drinking and playing; that after the marriage the defendant lived with Esther at her father's house, and that he was in the house several times where they were living as husband and wife. Inasmuch as everything that was done was subsequently detailed by the witness and was sufficient to prove a marriage contract and was not contradicted, the error was not prejudicial. There was also testimony of a witness that the defendant said he was married in Palestine eighteen or nineteen years ago, to Esther Schocherts. He also said to that witness that he had been divorced by a rabbi, but as it does not appear that a rabbi had jurisdiction to grant divorces, the alleged divorce, if his statements were any evidence of it, would be void. A divorce granted without jurisdiction is absolutely void. *Tucker* v. *People,* 122 Ill. 583.

The second witness was Tillie Sokel, a child nine years old, who testified that she was the daughter of the defendant and his wife, Esther, born in Jerusalem; that when she met her father in New York he recognized her and kissed her, and that afterwards he took a child of his second marriage in his lap and asked the witness how she liked her sister. The girl was objected to as a witness on the ground that she was not of proper age and did not comprehend the nature and effect of an oath. The competency of a child to testify depends upon his or her intelligence, understanding and moral sense. (*Draper* v. *Draper,* 68 Ill. 17.) If the preliminary examination shows that the child understands the nature and meaning of an oath and is of sufficient intelligence

212—16

and understanding, it is not error to admit the testimony, and the weight to be given to it is a matter for the jury. (*Feather-stone* v. *People,* 194 Ill. 325.) The preliminary examination of the witness in this case showed that she had attended school and knew the difference between truth and falsehood; that she knew her oath obliged her to tell the truth, and that she would be punished if she failed to do so. It was not error to permit her to testify. Another witness testified that she went to defendant's house with the daughter, Tillie, and defendant asked how his wife, Esther, was, and asked Tillie how she liked her sister, referring to a child of the second marriage.

The court admitted, over objection, a paper purporting to be a transcript from the records of marriages reported to the department of health in the city of New York, showing the marriage of Joseph Sokel to Rachel Schur. The ruling was erroneous for want of identification and evidence that the record was one required by law to be kept. Afterward the State's attorney, by leave of the court, withdrew the paper, and the defendant excepted to the ruling. An instruction was also given to the jury that they should not consider the transcript as any evidence in the case. It is contended that the withdrawal of the certificate did not cure the error of its admission, and it is doubtless true that the withdrawal of evidence of such a nature would not remedy the error in admitting it. The paper was of a nature to prejudice the defendant and was not competent evidence. But here, again, the marriage was proved by other and competent evidence, which was not controverted. It was proved by a witness present at the marriage that the defendant and Rachel Schur were married in New York City in March, 1901, by a rabbi, in a public assembly; that there was a ceremonial marriage, in which the defendant put a ring on Rachel Schur's finger; that a wedding present was given to them at that time, and that they lived together afterwards as husband and wife and had two children. It was also proved

that they lived together as husband and wife in Chicago, and there was no contradictory evidence. The marriage to Rachel Schur having been otherwise proved, so that the jury could not have found differently, the judgment should not be reversed on account of the admission of the transcript.

It is next complained that the court permitted the People to prove that Rachel Schur, the second wife, could not be found by an officer and was evading service of a subpœna. There was nothing tending to show that defendant kept her away from the trial, and it is insisted that the evidence was only offered to prejudice him. The court overruled defend- ant's·objection to the evidence, but, as we understand the ab- stract, afterward struck it out, and it will not be considered.

The next point is, that the defendant was denied the right to meet the witnesses against him face to face, which is guaranteed by the constitution, by the admission in evi- dence of the instrument, in the Hebrew language, prepared and signed by the two witnesses as a part of the marriage ceremony in Safed. The same objection was made in *Tucker* v. *People, supra,* to the introduction of a certified copy from the records of the county clerk, of the certificate of the person who performed the marriage ceremony en- dorsed on the back of the license. It was there held that the constitutional guaranty assures to the accused the right to meet witnesses face to face and prevents the taking of their depositions in a criminal prosecution, but that it has no ref- erence to record evidence which may become necessary to establish some material fact. The evidence tended to show that the making of the paper was a part of a ceremonial marriage under the law where the marriage took place. Its execution as a part of the ceremony was duly proved. It was not signed by the contracting parties but only by the witnesses, and as translated it recited the proposal of the youth Isaac Joseph, the son of Hebron, to the maiden Esther, daughter of the rabbi Moses, asking her to be his wife. It purported to recite the making of a marriage contract be-

tween the parties on the fourth day from Saturday, in the month of seven, in the year 5645 according to the laws of Moses and Israel. We think it was admissible, in connection with the testimony, as a part of the ceremonial marriage.

It was necessary for the People to prove a valid first marriage, and it is contended that in order to do so it was necessary to allege and prove the laws of the empire of Turkey authorizing the defendant to enter into a marriage contract. The evidence was that at the time of the marriage defendant was fourteen year old, and it is urged that the marriage was presumptively illegal and void because our statute only allows males over the age of seventeen to contract marriage. There is no presumption that the empire of Turkey has adopted statute laws of this State, and so far as there is any presumption concerning the laws of foreign countries, it is limited to the common law. If there were any presumption, the age at which a boy might contract marriage at common law was fourteen, and according to the evidence that was the age of the defendant at the time of the marriage. But at common law the marriage of an infant over seven years of age and under fourteen was merely voidable and subject to disaffirmance or ratification. If a boy within those ages were married, he might, when he came to the age of consent, declare the marriage void without any divorce, but if at the age of consent the parties agreed to continue together as husband and wife it was not necessary to be married again. The evidence showed that the defendant was fourteen years old at the time of marriage, and that the parties continued to live together as husband and wife for some years afterward. The validity of the marriage is to be determined by the laws of the empire of Turkey, and there was evidence tending, in some degree, to show that marriages at the age of defendant were lawful in that country. The evidence was that people were frequently married at that age in that empire, and the fact of the celebration of the marriage, followed by cohabitation, raises the pre-

sumption that it was lawful. Where the evidence establishes a contract of marriage, one contending that the contract falls within restrictions imposed by the State where the marriage took place has the burden of proof on that point. (*Laurence* v. *Laurence,* 164 Ill. 367.) If there was any restriction on the right of defendant to contract marriage at the age of fourteen years, the burden is upon him to prove it. In *Canale* v. *People,* 177 Ill. 219, we recognized the rule that if the evidence establishes a marriage in fact, followed by cohabitation, it is sufficient proof of the validity of the marriage without evidence as to the law of the place where the marriage was celebrated. The evidence proved a public ceremonial marriage by one in holy orders, followed by cohabitation as husband and wife, and the presumption is that the defendant was capable of contracting the marriage under the laws of the empire of Turkey. Nothing was shown to the contrary.

It is next insisted that the evidence was not sufficient to warrant a conviction on account of the failure of the People to prove that the defendant's wife had not been continuously absent from him for a period of five years together, he not knowing that she was living in that time, and also that at the time of the second marriage he had not been divorced by lawful authority or the marriage declared void. The criminal statute excepts such cases from its operation by a proviso to the section creating the offense. It is the rule that where an act is made criminal, with exceptions embraced in the enacting clause creating the offense so as to be descriptive of it, the People must allege and prove that the defendant is not within the exceptions, so as to show that the precise crime has been committed. Where the exception is descriptive of the offense it must be negatived in order to charge the defendant with the offense, but if the exception or proviso is in a subsequent clause, or in the same one but not incorporated within the enacting clause by any words of reference, it need not be negatived but is a mere

matter of defense. (*Lequat* v. *People,* 11 Ill. 330; *Metzker* v. *People,* 14 id. 101; *Chicago, Burlington and Quincy Railroad Co.* v. *Carter,* 20 id. 391; *Beasley* v. *People,* 89 id. 571.) If an act is prohibited except under certain conditions, the indictment must allege the circumstances for the purpose of showing that the prohibited act constituting the crime has been done. But the division of the statute into sections is of no practical importance. All that need be negatived is such exception as is descriptive of the offense. (10 Ency. of Pl. & Pr. 497.) In our statute the crime of bigamy is first defined as follows: "Whoever, having a former husband or wife living, marries another person or continues to cohabit with such second husband or wife in this State shall be deemed guilty of bigamy and be imprisoned in the pentitentiary not less than one nor more than five years and fined not exceeding $1000." Those circumstances complete the offense, and the proviso following, with its exceptions, is not in any manner descriptive of the crime. It must be averred that the former husband or wife was living at the time of the second marriage, (*Prichard* v. *People,* 149 Ill. 50,) and that was done in this case and the wife was present at the trial. It was not necessary to prove the exceptions contained in the proviso.

Finally, it is contended that the court erred in giving instructions to the jury concerning circumstantial evidence and authorizing a conviction upon such evidence. The evidence of the two marriages was direct, and not circumstantial, and the instructions were not called for by the evidence, but we do not think they could have done any harm.

We find no error in the record prejudicially affecting the plaintiff in error. The judgment is affirmed.

*Judgment affirmed.*