## CUBA R. CO. v. CROSBY.

(Circuit Court of Appeals, Third Circuit. May 15, 1909. Dissenting opinion, May 17, 1909.)

### No. 19, October Term, 1908.

EVIDENCE (§ 81*)—ACTION FOR NEGLIGENCE—MASTER AND SERVANT—PRESUMP-
TIONS—FOREIGN LAW.

In an action in a federal court by a servant against the master to recover for a personal injury received by plaintiff while in the employ of defendant in a foreign country, by reason, as alleged, of the failure of defendant to furnish plaintiff with reasonably safe machinery with which to work, the action being one cognizable at common law, the plaintiff will not be denied a recovery because the law of the foreign country is not pleaded or proved, but, in the absence of such proof, the court will apply the law of the forum, which will be presumed to be that also of the country where the injury was received. Slater v. Mexican Nat. R. R., 194 U. S. 120, 24 Sup. Ct. 581, 48 L. Ed. 900, Mexican Cent. R. R. v. Eckman. 205 U. S. 538. 27 Sup. Ct. 791, 51 L. Ed. 920, and Mexican Cent. R. R. v. Chantry, 136 Fed. 316, 69 C. C. A. 454, distinguished.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 102; Dec. Dig. § 81.*]

Contra, per Gray, Circuit Judge, dissenting, that it was essential to plaintiff's case to allege and prove that the acts of defendant complained of gave him a right of action under the laws of the country where they occurred, which was in this case a Latin country, where the common law was not in force.

In Error to the Circuit Court of the United States for the District of New Jersey.

For opinion below on rule for a new trial, see 158 Fed. 144.

Howard Mansfield, for plaintiff in error.

Benjamin M. Weinberg, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. The plaintiff is a citizen of Tennessee, and the defendant a corporation and citizen of New Jersey, in the Circuit Court of which this suit was brought. The action is for personal injuries received by the plaintiff while at work for the defendant in the capacity of stationary engineer in a planing mill, in the Island of Cuba. The negligence charged is the failure to provide reasonably safe machinery and appliances; and the defense set up, in addition to denying the charge so made, was that the negligence, if any, was that of a fellow servant, or, if there was a defect in the machinery, that it was obvious, and the plaintiff therefore assumed the risk. The parties went to trial on these familiar issues, and the jury gave a verdict for $6,000, on which judgment was duly entered, a motion for a new trial being overruled.

The complaint here is that the court should have directed a verdict; the law of Cuba on the subject of negligence and the relative duties of master and servant not having been shown, the plaintiff, as it is claimed, being called upon to allege and prove what that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

170 F.—24

law was, in order to make out a case. To this we are unable to agree. The cause of action is not one unknown to the common law, and so dependent upon statute, as in the case of negligence causing death. Neither is it, as in Slater v. Mexican Nat. R. R., 194 U. S. 120, 24 Sup. Ct. 581, 48 L. Ed. 900, expressly brought to enforce a liability of that character arising abroad, the foreign statute—that of Mexico—being declared on and proved, and the damages, by way of annuity or pension thereby given, being sued for and claimed. It may be conceded, also, that, having arisen in a foreign state, it is to be decided according to the law which there prevails, once it has been proved. But the question here is whether, a case having been established in all respects consonant with our ideas of right and justice, by which the plaintiff is thereby entitled to recover, according to the law as we understand it, we must stay our hands until the foreign law is shown. The question is not one peculiar to the federal courts, nor to be disposed of by any special rule prevailing there. Neither is it confined to the subject of torts. It may arise as well in a suit with regard to a note or bond, a policy of insurance, an inheritance, or a deed; and in each must receive similar treatment. However perfect in any such instance, therefore, the obligation may seem to be, no case is made out on which a verdict can stand, according to the doctrine which is contended for, unless at the same time the law of the foreign country where the obligation arose or the transaction took place is first made to appear. It might be a great hardship, amounting to a denial of justice, to compel this in some instances that we can conceive of, as in case of Senegambia or Thibet. Nor can a distinction be made that it shall apply to civilized countries that have a system of laws, while to countries that are uncivilized it shall not. The rule, as advocated, is that no relief can be given and that no case in fact exists, as there possibly would be if judged by the law of the forum, but that everything must be referred to the law where the transaction took place; according to which, if it was an uncivilized country and had no laws, there would be no right nor any wrong to redress. This is not our understanding of the law. The correct rule, as to which all the authorities, as we read them agree, is that, in the absence of proof of the foreign law, the court will apply the law as it conceives it to be, according to its own idea of right and justice, or, in other words, according to the law of the forum. That is the case between the different states of the Union, which in this respect are foreign to each other, where the presumption is freely, if not universally, indulged, that the law, except as it may be controlled by or dependent upon statute, is the same. That, also, is the rule as to countries strictly foreign; nor is it confined to those where the common law prevails. It is only another way of stating that, in the absence of proof, the law prima facie to be applied is the law of the place where the case comes up for trial. The authorities to this effect are so numerous as almost to be burdensome, but they are challenged by the argument, and it will not be out of the way, therefore, to go through them. It will simplify matters, however, and be more directly to the point, to cite only those which cover the case where the country is strictly foreign.

The law is thus laid down in Jones on Evidence (2d Ed.) § 84:

"Where the rights of litigants are to be determined in this country, although those rights may be affected by proof of the law of a foreign country where the contract was made or the right acquired, in the absence of any such proof the law of the forum must furnish the rule of decision."

Or, as it is put in 2 Whart. Conflict of Laws, § 778, p. 1531:

"Where there is no evidence as to the character of a foreign law, the courts will presume it to be the same as the domestic law; in other words, in lack of such evidence, the courts will presume the law governing the case before them to be the same as the lex fori."

In 13 Am. & Eng. Encycl. Law (2d Ed.) pp. 1060, 1061, after stating that it is a general rule throughout the United States that, in the absence of proof as to the laws of a sister state, they will be presumed to be the same as the lex fori, and that this has been extended so as to apply to the laws of foreign countries, and also that, while this is ordinarily limited to the common law and according to the weight of authority, no presumption arises that other countries or states have adopted the statute law of the domestic forum, it is added that:

"In the absence of proof of the foreign law, the court will of necessity proceed according to the law of the forum."

And in 9 Encycl. Plead. & Prac. 543, it is said:

"Where a foreign law is not properly pleaded and proved, the presumption is that it is the same as that of the state in which the action is brought."

Nowhere is the rule better or more clearly given than in Monroe v. Douglass, 5 N. Y. 447, where it is said by Foot, J.:

"It is a well-settled rule, founded on reason and authority, that the lex fori, or, in other words, the laws of the country to whose courts a party appeals for redress, furnish in all cases, prima facie, the rule of decision; and if either party wishes the benefit of a different rule or law, as, for instance, the lex domicilii, lex loci contratus, or lex rei sitæ, he must aver and prove it."

Or, as it is succinctly put in Linton v. Moorehead, 209 Pa. 646, 59 Atl. 264:

"The law of * * * any * * * foreign state, if material, is a fact to be proved, and, in the absence of such proof, it is presumed to be the same as the law of this state."

This rule will be found to be abundantly sustained by an analysis of the cases.

Thus in Brown v. Gracey, Dow. & Ry. N. P. 41, 16 Eng. Com. Law, 426, note, action was brought on a promissory note, and there was a verdict for the plaintiff. Defendant moved for a new trial on the ground that the contract was made in Scotland, and that the plaintiff should have proved what the Scotch law was, and that the defendant was made liable thereby. But Abbott, C. J., said that, if the law of Scotland differed from the law of England as to liability, it lay on the defendant and not the plaintiff to prove it, and a rule was therefore refused. This case is cited with approval by Willes, J., speaking for the Exchequer Chamber in Lloyd v. Guibert, L. R. 1 Q. B. 115, 129, where it is said:

"A party who relies upon a right or an exemption by foreign law is bound to bring such law properly before the court, and to establish it by proof.

Otherwise, the court, not being entitled to notice such law without judicial proof, must proceed according to the law of England."

In Scott v. Lord Seymour, 1 Hurls. & Colt. 219, action was brought by one British subject against another for an assault and battery committed in Italy, and it was held by the court of Exchequer, as well as the Exchequer Chamber, that objection that by the law of Italy damages could not be recovered until certain penal proceedings which had been there commenced were determined was a matter of procedure only and no bar to an action in England. And Wightman, J., was of opinion that, if an action would lie by the English law for a particular wrong, the English courts would give redress, although it was committed in a country by the laws of which no redress was granted, if the parties were both British subjects.

In The Halley, L. R. 2 P. C. 193, it is said by Selwyn, Lord Justice:

"It is true that in many cases the courts of England inquire into and act upon the law of foreign countries, as in the case of a contract entered into in a foreign country, where by express reference, or by necessary implication, the foreign law is incorporated with the contract, and proof and consideration of the foreign law, therefore, become necessary to the construction of the contract itself; and as in the case of a collision on an ordinary road in a foreign country, where the rule of the road in force at the place of collision may be a necessary ingredient in the determination of the question by whose fault or neglignce the alleged tort was committed. But in these and similar cases the English court admits the proof of the foreign law as part of the circumstances attending the execution of the contract, or as one of the facts upon which the existence of the tort, or the right to damages, may depend, and it then applies and enforces its own law so far as it is applicable to the case thus established"

—adding that in their lordships' opinion it was alike contrary to principle and to authority to hold that an English court would enforce a foreign municipal law, and give a remedy in the shape of damages in respect of an act, which according to its own principles imposed no liability on the parties from whom damages were claimed; thus showing how far, even when proved, the foreign law is limited.

The question seems to have arisen more often than anywhere in the New York courts, where the rule is uniformly and consistently enforced. Thus in Monroe v. Douglass, 5 N. Y. 447, already referred to, the court was called upon to construe and carry out a testamentary settlement executed by Sir William Douglass, probated and disposing of estates in Scotland. There was no proof of what the law of Scotland was, but the court did not hesitate to entertain and dispose of the case on that account, which it proceeded to do, holding that in the absence of proof it was to be determined according to the New York law.

In Whitford v. Panama R. R., 23 N. Y. 465, plaintiff brought suit as administrator for the death of his intestate, caused by the negligence of defendant company in the operation of its railroad on the Isthmus of Panama, in the then republic of New Granada. It did not appear that a right of action was given in such cases by the laws of that country, and the action, therefore, failed; but in disposing of that question, it is said that, while the courts do not in general take note of the laws of a foreign country except as they are proved, in the absence of proof they indulge in certain presumptions, as, for

instance, that a man is entitled to personal freedom and the absence of bodily restraint, as well as to be exempt from physical violence; for violation of which, committed abroad, if action be brought, the party need not in the first instance offer proof of their being unlawful in the place where they occurred, the courts not presuming the existence of a state of law not consonant with reason and natural justice in any country, whereby compensation is not given.

In Savage v. O'Neil, 44 N. Y. 298, trespass was brought for taking in execution, as the property of the husband, goods which were claimed by the wife. The wife testified that she loaned to her husband money which she got from her mother in Russia, for which her husband, by bill of sale, transferred to her the goods in question. The case turned on what her rights were to the money as against her husband under the Russian law. There was no proof of that law, but, in the absence of it, it was held that the law of New York furnished the rule.

In Hynes v. McDermott, 82 N. Y. 41, 37 Am. Rep. 538, which was an ejectment, the right of the plaintiffs to recover depended on their establishing relationship to one Hynes, which in turn depended on whether he had contracted a valid marriage. The evidence as to this was such that it would warrant an inference of marriage by the laws of New York, where suit was brought. But the acts and circumstances on which this was predicated took place, a part on English soil, a part on a vessel crossing the channel to France, and a part in France, where the parties subsequently lived. It was conceded that the acts in England did not make out a valid marriage according to the English law, and the French law was not proved. But it was held that enough was shown as to what occurred in crossing the channel and in France to establish a marriage according to the New York law, and that a verdict for the plaintiff was therefore properly entered.

In Mackey v. Mexican Central R. R. (City Ct. N. Y.) 78 N. Y. Supp. 966, which cannot be distinguished in principle from the present case, it was declared that, where suit is brought by a resident of the state against a foreign corporation to recover damages for personal injuries, sustained through the negligence of the defendant as a common carrier, in Mexico, it is not necessary to state the Mexican law in the complaint. If the law of Mexico denies the plaintiff's right to compensation, this is a matter of defense; for the court will not presume the existence of a state of law in any country by which compensation for such injuries is not provided.

In Pratt v. Roman Catholic Orphanage Asylum, 20 App. Div. 352, 46 N. Y. Supp. 1035, affirmed 166 N. Y. 593, 59 N. E. 1120, a bequest to St. Patrick's Church, Soho, England, was objected to on the ground that it did not appear that the legatee was an incorporated association competent to take. There was an effort made to prove that by the laws of England such an unincorporated association may take for charitable purposes, but it failed. And it was held that, a bequest to such an association being void by the laws of New York, it must, in the absence of proof, be held void in England too. "Whenever the question is presented," says Rumsey, J., "as to what is the

law of a foreign country in any given case, it must be established as a fact; and, if there is no evidence given upon the question, the court will either make no presumption at all, or will presume that the foreign law is the same as the law of this state."

Nor is there anything at variance with this in Crashley v. Press Publishing Company, 179 N. Y. 27, 71 N. E. 258, relied on by defendant's counsel. If it stood for what it is so cited, it would run counter to the current of the cases in that state which have been referred to. But the fact is it does not. The action there was libel for the publication in the New York World of an article reflecting on the conduct of the plaintiff, with regard to certain happenings, while he was a resident of Rio Janeiro, Brazil; the libelous charge in substance being that the plaintiff was engaged in a conspiracy to bring about a revolution in that country, the publication of the article having caused his arrest by the police of Rio Janeiro, and his being put in jail there for several days. The complaint was dismissed at the trial, and this was affirmed on appeal, it being held that no libel was shown, the article not being libelous per se, and there being nothing to show that by the law of Brazil the plaintiff was charged with crime. The ground of this decision, if carefully observed, will remove all question as to its purport. The article not otherwise reflecting on the plaintiff, it had somehow to appear that, by the laws of the land where the occurrence with which he was said to have been connected took place, an offense was committed which made him amenable thereto, which could only be shown by proof of what those laws were, as to which no presumption could be indulged, the frequent revolutions in South American countries, as it is somewhat gratuitously suggested, not warranting the inference that the fomenting of them there was derogatory to him. This goes a good ways. But however that may be, the mistake made is in identifying this in principle with a case where, independent of local law, and however it may be qualified thereby when it is shown, the plaintiff has a good case on its face, and does not have to invoke the local law to make it out.

In Sokel v. People, 212 Ill. 238, 72 N. E. 382, the defendant was indicted for bigamy, it being charged that he had been married before at Safed, in Palestine, Turkey, to prove which it was shown that a marriage ceremony had been performed there by a rabbi, the defendant being of the Jewish faith, and celebrated by the defendant's family and friends. He was at that time but 14 years old, and, coming to this country, he later married another woman in New York, with whom he was living when indicted in Illinois. It was essential, of course, to a conviction, to establish that the first marriage was valid, and it was contended by the defendant that it was necessary, in order to do so, to prove that he was authorized by the laws of Turkey to contract a marriage at his then early age, and that what took place in fact constituted a marriage. But it was held that a public ceremony conducted by one in holy orders, purporting to marry the parties, followed by cohabitation, having been shown, the presumption was that the marriage, so apparently contracted, was valid by the Turkish laws, and that, if it was not, the laws of Turkey, relied

on to show the contrary, should have been proved by him. This case is a most significant one, because in a criminal prosecution, where the rules of evidence, if anywhere, are strictly held, the presumption was indulged that, in the absence of proof to the contrary, that which constituted a valid marriage in Illinois made out a valid marriage in Turkey, unless the opposite was shown.

In Carpenter v. Grand Trunk R. R., 72 Me. 388, 39 Am. Rep. 340, plaintiff bought a ticket at Portland, Me., for a through trip to Montreal. By its terms, it was only good for a continuous passage, entered upon within two days from its date. Plaintiff started on his journey but stopped off at several places on the way, within the state, relying on a Maine statute which gives the holder of such a ticket the right to stop off as he chooses, and makes it good for six years. He finally boarded a train in Canada for Montreal, but was ejected by the conductor because his ticket by its terms was not good, and thereupon he brought suit against the railroad in Maine. But it was held that the action could not be maintained, the act relied on having no extraterritorial force, and the statute law of Canada not being presumed to be the same. The significance of this decision here lies in the recognition that in the absence of proof the case was to be decided according to the local law, the common law, however, and not the statute law of the state, being applied, by the former of which the plaintiff had no case; and it is of peculiar interest and importance because of the distinction so drawn, which all the more confirms the rule.

In Woodrow v. O'Connor, 28 Vt. 776, the parties, who were then residents of Canada, submitted their differences to arbitrators, each executing a note to the other and depositing it with the arbitrators, to be delivered to the one in whose favor the award should be made. The plaintiff, having got the award, brought suit in Vermont on the defendant's note; and it was held that while the transaction was governed by the Canadian law, where the occurrence took place, there being no evidence as to what that law was, it would be assumed to be the same as that of Vermont, by which the plaintiff was entitled to recover.

In McLeod v. Conn. R. R., 58 Vt. 727, 6 Atl. 648, the plaintiff sued for personal injuries sustained in the province of Quebec, through the defendant's neglect to construct and maintain its railway at a point where it crossed a public highway there, as it should, according to the requirements of the statute law of the province. This statute was not set out in the declaration, which was demurred to on the ground that the action so shown was local and not transitory, and was not able to be brought in Vermont. But this view was not sustained. The right of action there, it is to be noted, depended on the Canadian statute, the same as where suit is brought on a foreign statute giving an action for death, as to which no presumption can be indulged; and this is to be kept in mind in order not to misconstrue what is said. That there was no intention to lay down anything other or different than the prevailing rule is shown by the decision last cited from the same state, as well as by the later one immediately following.

In State v. Morrill, 68 Vt. 60, 33 Atl. 1070, 54 Am. St. Rep. 870,

the defendant was indicted for larceny. The proof was that he stole a team in Canada and brought it into Vermont, the law of that state being that one who steals property in another jurisdiction and brings it into Vermont may be held there for larceny. The law of Canada showing that the act of the defendant in taking the team amounted to larceny in that dominion was not proved, in view of which it was contended that no conviction could be had. But the court applied the presumption that the law of Canada in the premises was the same as that of Vermont, and, as the taking of the team under the circumstances shown amounted to larceny by the Vermont law, the conviction was sustained. Here again, the same as in Sokel v. People, 212 Ill. 238, 72 N. E. 382, above, we have the presumption applied in a criminal case. The observations of Rowell, J., in this case, on the general subject under discussion, are too long to quote, but may be consulted with profit in this connection.

In Loaiza v. Superior Court, 85 Cal. 11, 24 Pac. 707, 9 L. R. A. 376, 20 Am. St. Rep. 197, it was sought to enjoin proceedings which had been instituted to set aside a sale of mining property in Mexico, on the ground of fraud; and it was, among other things, objected that the law of Mexico upon the subject had not been shown. But it was held that, until the contrary appeared, it would be presumed that the law of Mexico, on which the validity of the contract depended, was the same as that of California. And this doctrine was reiterated in Wickersham v. Johnston, 104 Cal. 407, 38 Pac. 89, 43 Am. St. Rep. 118, where, according to the first headnote, it is declared that, where there is no evidence tending to show what is the law of a foreign country touching the question raised, it must be presumed that it is the same as the law of the state where suit is brought.

In Chase v. Alliance Insurance Company, 9 Allen (Mass.) 311, suit was brought on a policy of marine insurance, and the case turned on the construction to be given to the charter party, which, having been executed in Scotland, was to be governed by the law there. There was no proof, however, of what the Scotch law was, and judgment was thereupon given to the plaintiff in accordance with the law of Massachusetts. "The law of Scotland upon a question of commercial law," as it is put in the headnote, "will be presumed to be the same as our law, in the absence of Scottish adjudications or evidence to the contrary." So in Aslanian v. Dostumian, 174 Mass. 328, 54 N. E. 845, 47 L. R. A. 495, 75 Am. St. Rep. 348, where the plaintiff sued to recover the money represented by a draft, drawn in Massachusetts on a party in Harpoot, Turkey, it was held that whether the law of negotiable paper was known in Turkey requiring the protection by protest of such an instrument was to be proved by the party who wished to profit thereby. And in Mittenthal v. Mascagni, 183 Mass. 19, 66 N. E. 425, 60 L. R. A. 812, 97 Am. St. Rep. 404, where the court was called upon to interpret a contract made in Italy, which by special stipulation was to be construed according to Italian law, it was declared that it would be assumed that "the law of Italy is like our own."

These cases taken at random from the reports, and by no means exhausting the list, conclusively show the law as it is administered in

the state and in the English courts. Nor in the federal courts is a different rule in any respect applied.

Thus in Dainese v. Hale, 91 U. S. 13, 23 L. Ed. 190, suit was brought to recover the value of certain personal property which it was charged that the defendant, when consul general of the United States in Egypt, had unlawfully and maliciously attached. The defendant set up that what he did he did in his official capacity, being invested with judicial functions over citizens of the United States residing in Egypt, as the plaintiff then was. His authority in the premises depended, however, on the powers given him by the Turkish law; and it was held that this he was bound to plead and prove. The significance of this case consists not only in what it decides, but in what it assumes and recognizes. The alleged trespass occurred in Egypt, and it was thus, of course, controlled by the local law, once that was shown. No question was made, however, of the right of the plaintiff, having proved what amounted to a trespass as we apprehend it, in this country, to recover without showing what that law was; while the defendant, who sought to justify his acts under it, which were otherwise unauthorized, was required to prove that he was exempt from liability thereby. This was altogether unnecessary, however, it is to be observed, if the rule which is now contended for were to prevail, it being incumbent on the plaintiff, according to that, as the first step in his case—the transaction having occurred in a foreign country—to show what the law of that land is and that he has a right to recover under it.

But the question is set at rest, as it seems to us, by what is said by Mr. Justice Bradley, speaking for the court in The Scotland, 105 U. S. 24, 26 L. Ed. 1001:

"In administering justice between parties," says that eminent judge, "it is essential to know by what law, or code, or system of laws, their mutual rights are to be determined. When they arise in a particular country or state, they are generally to be determined by the laws of that state. Those pervade all transactions which take place where they prevail, and give them color and legal effect. Hence if a collision should occur in British waters, at least between British ships, and the injured party should seek relief in our courts, we would administer justice according to the British law, so far as the rights and liabilities of the parties were concerned, provided it were shown what that law was. If not shown, we would apply our own law to the case. In the French or Dutch tribunals they would do the same. But if a collision occurs on the high seas, where the law of no particular state has exclusive force, but all are equal, any forum, called upon to settle the rights of the parties, would, prima facie, determine them by its own law, as presumptively expressing the rules of justice; but if the contesting vessels belong to some foreign nationality, the court would assume that they were subject to the law of their nation, carried under their common flag, and would determine the controversy accordingly. If they belonged to different nationalities, having different laws, since it would be unjust to apply the laws of either to the exclusion of the other, the law of the forum—that is, the maritime law as received and practiced therein—would properly furnish the law of decision. In all other cases, each nationality will administer justice according to its own laws."

In line with these views, in Davison v. Gibson, 56 Fed. 443, 5 C. C. A. 543, it was held by the Circuit Court of Appeals of the Eighth Circuit that where the rights of the parties depended on the laws of the Creek Nation, while the court would not take judicial notice

of what those laws were, and neither would it presume that they were regulated by the common law, yet, in the absence of proof as to what they actually were, the law to be applied was the law of the forum, and the court below was reversed for not doing so.

There is nothing counter to this doctrine in Slater v. Mexican National R. R., 194 U. S. 120, 24 Sup. Ct. 581, 48 L. Ed. 900, upon which much reliance is placed. The action there was to recover for the death of an employé, a switchman, who was killed in Mexico by the negligence of the defendant company, operating there. The right to recover was based on the Mexican law, which was set out and proved, as it had to be, there being no right of action otherwise. The compensation provided by that law, where death has been wrongfully caused, looks to the support of the dependent family by periodical payments, enforced by a decree, analogous, as it is said, to a decree for alimony, and subject to modification from time to time as circumstances vary. This measures the liability and inheres in and gives character to the relief given by that law, and, the courts of this country having no means for entering or enforcing a judgment of that kind, it was held that an action here could not be sustained. That is the whole of the decision, and, if it is kept in mind, no confusion can arise over what is said or what it stands for. In no respect was the question involved, which is here mooted, whether, on proof of a case otherwise good by the law as it is apprehended in this country, the plaintiff is entitled to recover, or is to be nonsuited, on its being shown that it arose abroad, if the foreign law is not proved in the same connection. What is said in the case is to be construed in the light of what was decided; not what was decided by what was said.

Neither is there anything which touches the question in Mexican Central R. R. v. Eckman, 205 U. S. 538, 27 Sup. Ct. 791, 51 L. Ed. 920, which was ruled on the strength of the Slater Case; the question there certified and passed upon being simply whether the plaintiff, who had been injured while in defendant's service in Mexico, could recover without regard to the laws of that country, those laws having been put in evidence and proved, and showing the same character of liability discussed in the Slater Case.

Nor is the Court of Appeals of the Fifth Circuit to be regarded as having laid down any different rule. In Mexican Central R. R. v. Marshal, 91 Fed. 933, 34 C. C. A. 133, in that court, the plaintiff brought suit for injuries received while in the defendant's employ as a freight conductor in Mexico. He did not prove the laws of that country, and the defendant, while supplying them in part, stopped short of proving all of them, the article regulating the operation of railroads being omitted. But it was held that the failure to prove this article was not fatal, "because," as it is said, "in the absence of proof, it is to be presumed that, in the matter of liability of an employer for his negligence, resulting in injuries to an employé, the law of Mexico is the same as the law of Texas; in both of which the civil law originally prevailed." And this declaration was repeated in Mexican Central Railroad v. Glover, 107 Fed. 356, 46 C. C. A. 334, where the facts were substantially the same, except

that there was no proof whatever of the Mexican laws, and the defendant, on the strength of this, moved that a verdict be directed, which was refused. It is true that the presumption as to the laws of Mexico was indulged because of the common origin with those of Texas. But the contention here is that there can be no presumption whatever in any such case, the foreign law having to be alleged and proved, which these two decisions effectively refute.

Nor is the case of Mexican Central Railroad v. Chantry, 136 Fed. 316, 69 C. C. A. 454, in the same court, at variance with this. There, as in the others, the action was for personal injuries suffered by the plaintiff while employed by the defendant company as a railroad conductor in Mexico. But, differing from the others, the laws of that country were pleaded and proved, both those which gave the plaintiff a right of action, and those set up by the defendant, by which it was sought to be established in bar that, by legal proceedings had in Mexico, it had been decided that there was no liability by reason of the accident, and that the plaintiff had thus no cause of action. It was with a case of that character that the court had to deal, and to it whatever was said was necessarily addressed. There is nothing, as we view it, which bears, one way or the other, on that which is involved here. But if there is, it is to be taken with the facts of the case in mind. It cannot be assumed that there was any intention of qualifying the law as it had been laid down by the same court in the cases which had gone before, where the question here in issue came squarely up and was decided.

Having thus demonstrated, as we feel that we have from this review of the authorities, that, in the absence of proof as to what the foreign law is, a cause of action, good as to the law of the forum, unaffected by statute, is entitled to prevail, the judgment in the court below must stand. It is not as though there was a divergence of authorities, some holding one way and some another, as to which a difference of opinion might thus be indulged, and, whichever way they preponderated, the court would be entitled to choose those which suited it best. As we regard them, they are all one way, without a variant note, the contrary rule, which we are asked to lay down, whatever be said of its logic, having nothing by way of authority on which to stand. The plaintiff, as already stated, made out a complete case under our law based on the established duty of the master to his servant to exercise due care to supply him with reasonably safe machinery and appliances with which to work. This duty is not one imposed by statute, however it may be increasingly regulated or controlled thereby. It is one which has been evolved by the courts out of the character of the relation as a matter of right and justice, which may thus be well assumed to be the law of every civilized land, until something different is shown, particularly where, as here, the rights of citizens of the same nationality are involved. And on this theory the case was tried; the plaintiff proving that which would ordinarily be regarded as sufficient to make out a case of negligence by which the defendant would be liable, and the defendant denying and endeavoring to meet this by charging the accident to the negligence of a fellow workman, and setting up the plaintiff's knowledge of the de-

fect and assumption of the risk. Both parties thus planted themselves squarely on their respective rights at common law, recognizing, if not conceding, that they were to be so determined. It is true that at the close of the plaintiff's case, and again when the evidence on both sides was in, a motion was made to dismiss the case on the ground which is now urged. But that does not change the fact that, as it was actually tried, it was treated as depending on and governed by the law as ordinarily understood. Not only because of that, but, above all, because of the rule which uniformly prevails that, in the absence of proof to the contrary and until the foreign law has been actually shown, the law of the land is to be applied, the case in our opinion was correctly ruled at the trial, and should now be affirmed.

GRAY, Circuit Judge (dissenting). The writ of error in this case brings up for review a judgment rendered in the Circuit Court of the United States for the District of New Jersey. The action in which said judgment was rendered, was brought by the defendant in error (hereinafter called the plaintiff) against the plaintiff in error (hereinafter called the defendant), for personal injuries alleged to have been received while the plaintiff was an employé of the defendant, in a planing mill conducted by said defendant in the republic of Cuba. These injuries were alleged by the plaintiff to have been the result of defendant's negligence in not maintaining a certain stationary engine, at which plaintiff was employed by defendant as an engineer, in a reasonably safe, stable, and proper condition, so as not to endanger the safety of those of its employés who were compelled to work near and about the same.

The defendant was a corporation of the state of New Jersey, and the plaintiff proved that he was a citizen of the state of Tennessee. The general jurisdiction of the Circuit Court, therefore, attached, by reason of the diversity of citizenship. Plaintiff's declaration stated the ordinary case of negligence of the employer, in not using due care under the circumstances to provide for its employés safe tools, machines, and appliances with which to work.

If the negligent acts, as charged in the declaration, had been committed in the state of New Jersey, it is not questioned that, by the laws of that state, the laws of the forum, a right of action would have accrued to the plaintiff. The declaration, however, charges that these negligent acts were committed at Camaguey, in the republic of Cuba, and the case was therefore justiceable in the Circuit Court of the United States for the District of New Jersey only in case the injury complained of constituted an actionable wrong under the laws of Cuba, and imposed upon the wrongdoer an obligation to make reparation. There is nothing, however, in the plaintiff's declaration to indicate what right of action accrued to him, or what obligation was imposed upon the defendant in the premises, by such laws. Those laws were in no wise referred to, and the case was presented to the court below on the theory that the plaintiff's right to recover was established by the law of the forum, or else upon the theory that the law of the place where the alleged wrong was committed was to be presumed to be the same as that of the law of the forum. The

theory first mentioned is, of course, untenable, and we think the latter is equally so.

It is well settled that, though the act be wrongful by the foreign law, if it is not wrongful by the law of the forum, no action will lie, comity of the courts not extending, either in this country or in England, to the enforcement of liabilities not recognized by the law or policy of their own state or country. Macdade v. Fontes, L. R. 2 Q. B. 231; Phillips v. Eyre, L. R. 6 Q. B. 1. The theory upon which such liabilities may be recognized and enforced is clearly stated by the Supreme Court in the late case of Slater v. Mexican Natl. R. R. Co., 194 U. S. 120, 126, 24 Sup. Ct. 581, 48 L. Ed. 900. An action had been brought in the United States Circuit Court of Texas by the widow and children of William H. Slater, against a Colorado corporation operating a railroad in the republic of Mexico, to recover damages for the death of the said husband and father, who was employed by defendant company as a switchman on its road, and was killed, as alleged, through defendant's negligence, while coupling two freight cars in Mexico. The laws of Mexico, conferring a right of action, were set forth in plaintiff's petition. The defendant, by plea, set forth additional sections of the Mexican statute, by reason of which, as it contended, the action given by the Mexican laws was not transitory. A demurrer to this plea was sustained by the court below. The case was then taken to the Circuit Court of Appeals, where the judgment was reversed and the action ordered to be dismissed. This judgment of the Court of Appeals came before the Supreme Court, on certiorari, Mr. Justice Holmes, in delivering the opinion of the Supreme Court, said:

"We assume for the moment that it was sufficiently alleged and proved that the killing of Slater was a negligent crime within the definition of article 11 of the Penal Code, and, therefore, if the above sections were the only law bearing on the matter, that they created a civil liability to make reparation to any one whose rights were infringed.

"As Texas has statutes which give an action for wrongfully causing of death, of course there is no general objection of policy to enforcing such a liability there, although it arose in another jurisdiction. Stewart v. Baltimore & Ohio R. R., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537. But when such a liability is enforced in a jurisdiction foreign to the place of the wrongful act, obviously that does not mean that the act in any degree is subject to the lex fori, with regard to either its quality or its consequences. On the other hand, it equally little means that the law of the place of the act is operative outside its own territory. The theory of the foreign suit is that although the act complained of was subject to no law having force in the forum, it gave rise to an obligation, an obligation which, like other obligations, follows the person, and may be enforced wherever the person may be found. Stout v. Wood, 1 Blackf. (Ind.) 71; Dennick v. Railroad Co., 103 U. S. 11, 18, 26 L. Ed. 439. But as the only source of this obligation is the law of the place of the act, it follows that that law determines not merely the existence of the obligation (Smith v. Condry, 1 How. 28, 11 L. Ed. 35), but equally determines its extent. It seems to us unjust to allow a plaintiff to come here absolutely depending on the foreign law for the foundation of his case, and yet to deny the defendant the benefit of whatever limitations on his liability that law would impose."

In Cooley on Torts (3d Ed.) p. 900, it is said:

"But it is agreed that to support an action (for a foreign tort) the act must have been wrongful or punishable where it took place, and that whatever

would be a good defense to the action, if brought there, must be a good defense everywhere."

See, also, Herrick v. Minn. & St. Louis Ry., 31 Minn. 11, 16 N. W. 413, 47 Am. Rep. 771.

It is clear, therefore, that the existence of an obligation, and the right to its enforcement by the foreign law, is essential to a valid cause of action in the trial forum, and the general rule in this country and in England undoubtedly is the one which flows logically from the premises, viz., that the existence of such obligation under the foreign law must be alleged and proved in the domestic forum; otherwise, no valid cause of action is made to appear to the court. In such cases, the foreign law must be proved as a fact; otherwise, the plaintiff fails to make out his cause of action, which is the obligation imposed on the defendant by that law, and by that law alone.

It must be noted that, in Slater v. Mexican Natl. R. R. Co., supra, the court, in the beginning of the statement which we have extracted from the opinion, say:

"We assume for the moment that it was sufficiently alleged and proved that the killing of Slater was a negligent crime, within the definition of article 11 of the Penal Code."

So also, in the case of Mexican Cent. Ry. Co. v. Chantry, 136 Fed. 316, 69 C. C. A. 454, which was not a case of death, but a suit brought in the Circuit Court of the United States, for injuries received by the plaintiff in Mexico. The petition set forth the laws of Mexico, which created the obligation sued upon, and the Circuit Court of Appeals for the Fifth Circuit said:

"To recover in this transitory action for the alleged personal injuries, it must be shown that the laws of Mexico give a right of action. Foreign laws are matters of facts, and, like other facts, must be pleaded and proved. Liverpool & G. W. S. Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788. Assuming that in this case it had been sufficiently pleaded and proved that under the laws of Mexico the plaintiff is given a civil right of action to recover from the defendant company for the injuries in question, we still meet the proposition that," the right of action was extinguished under the same laws.

The court then say:

"After much consideration, we conclude, on principle and authority, that the rule declared in McLeod v. Connecticut & P. R. Co., 58 Vt. 727, 6 Atl. 648, as follows: 'Although a civil right of action acquired or a liability incurred in one state or country for a personal injury may be enforced in another to which the party in fault may have removed or where he may be found, yet the right of action must exist under the laws of the place where the act was done or neglect accrued. If no cause or right of action for which redress may be had exists in the country where the personal injury was received, then there is no cause of action to travel with the person claimed to be in fault, which may be enforced in the state where he may be found'—is a correct statement of the law of the case."

However it may be in cases where the alleged injury was committed in one of the other states of the Union, or in other places where the English common law prevails, there is clearly no presumption in the plaintiff's favor in the case under consideration. The court will take judicial notice of the fact that Cuba is one of the Latin countries, where the common law, as we understood it, is not in force.

As we have said, there is here no allegation of a cause of action under the laws of Cuba, or any reference to such laws. The plaintiff testified as to the facts as they occurred in that republic, and as he had not alleged, neither did he prove, that under the laws of Cuba any obligation was imposed by reason of said laws on the defendant. At the conclusion of plaintiff's testimony, defendant's counsel moved that the case be dismissed, on the ground that it clearly appeared that plaintiff had made out no cause of action justiceable in the forum in which his suit was being tried. The court overruled the motion as one for a nonsuit, saying that it would entertain a motion later. When the case closed, defendant's counsel moved to instruct the jury in favor of defendant, on the ground that the court had no jurisdiction, because it had not been proved that the law of Cuba gave any right of action on the facts in evidence. This motion was denied and exception was duly taken and allowed. After verdict in favor of the plaintiff, defendant's counsel, on the same ground, moved to set aside the same and enter judgment for defendant, notwithstanding the verdict. In denying this last motion, the learned judge of the court below delivered an interesting opinion. The part pertinent to our present purpose, we quote, as follows:

"An action brought in one of our states for damages resulting from a common-law tort committed in another of our states may doubtless be maintained without proof of the lex loci. But where an action to recover damages for a wrongful act committed in another state is maintainable solely under some statutory authority of that state, and not under the common law, there the statutes of the state conferring the right of action must be both pleaded and proven by him who asserts the right. See Wooden v. N. Y. & P. R. R. Co., 126 N. Y. 10, 26 N. E. 1050, 13 L. R. A. 458, 22 Am. St. Rep. 803, and Keep v. Natl. Tube Co. (C. C.) 154 Fed. 121. In the present case the right of action is not based on any statute of Cuba, and the defendant insists that the common law cannot be presumed to exist in Cuba, inasmuch as that country was formerly a Spanish colony.

"But, as above stated, the defendant has filed the plea of the general issue only. The declaration alleges what, according to the lex fori, is actionable negligence on the part of the defendant. The defendant by pleading the general issue has not denied the legal sufficiency of the allegations of the declaration. If the lex loci delicti does not give to the plaintiff a right of action, that defense should have been presented by a special plea and supported by proofs offered by the defendant. I do not think it was obligatory on the part of the plaintiff to set forth in his declaration in express terms what the special law of the republic of Cuba on the subject of actionable negligence may be. He had the right to set forth a cause of action which, according to the law of the forum, would be complete, and in the event of a conflict between the lex loci and the lex fori, the defendant ought to have shown by a proper plea that under the lex loci the plaintiff acquired no right of action."

I cannot take this view of the rights of the defendant in this case. In the first place, there is nothing in either pleadings or proofs to show that the plaintiff was clothed with a right of action under any law of the republic of Cuba. In the next place, how are we to know, if there is any right of action at all, that it is not conferred by a statute whose limitations may be such as to render it not transitory, as was the case in Slater v. Mexican Natl. Railroad Co., supra? There is nothing upon which to found the statement of the learned judge of the court below, that "in the present case, the right of action is not based on any statute of Cuba." If presumption were allowable

as to this, the only reasonable one would be, that whatever right of action the plaintiff was clothed with, woud be, as in Mexico and other Latin countries, derived from the written law of a civil code. As we have already said, there could be no presumption that the common law, as enforced in the federal court for the district of New Jersey, was in force in Cuba, where the accident happened, and we cannot see how the plea of the general issue could relieve plaintiff from fully establishing the cause of action upon which he had brought suit. It would, indeed, be a hard rule that would compel the defendant, by affirmative plea and testimony, to assume the burden of proving a negative, by showing that there was no law justifying the action in Cuba. If it is to be considered a question of jurisdiction, that question can always be raised in any form and at any stage of the trial. But the term "jurisdiction" is somewhat vague and elusive. Courts may have general jurisdiction of the parties and subject-matter of a suit, and yet will not further entertain it when no cause of action is shown, and the word "jurisdiction" is sometimes loosely applied in that sense.

It is not necessary, therefore, to deal with this case as one technically of jurisdiction, or to consider how it should be questioned, whether by demurrer or plea. The plaintiff comes into the court below, in New Jersey, declaring that he had suffered damage by reason of certain alleged negligent acts committed by the defendant in Cuba. Under a plea of the general issue, he produces testimony, tending to prove the acts alleged, but offers no proof that said alleged negligent acts constituted a cause of action in Cuba. Why should not the defendant have the right to require that he should complete his proof, by fully establishing his cause of action, and where he has failed to do so, to demand either that the case be dismissed, as in an ordinary case of failure of proof, or, that peremptory instructions upon all the evidence be given to the jury? The lex fori cannot help the plaintiff, as the right of the plaintiff and the obligation of the defendant must exist under the lex loci, or not at all.

As the federal courts will take judicial notice of the laws of the several states composing the Union, it would not be necessary, in a case like the present, to allege or prove the law of a state different from that of the forum, and it will be presumed, in the absence of proof to the contrary, that, in countries where the common law of England prevails, the lex loci is the same as the lex fori. Such a presumption, however, takes the place of proof, is a kind of proof, and is founded upon known probabilities, and is very unlike a legal fiction which exists independently of all probability and even of known facts. Here, outside the region of recognized probability upon which to found a presumption, the proposal is to presume the plaintiff's whole case—its entire foundation—as if, in an action upon an express contract, the existence of the contract itself were asked to be presumed—something quite different from indulging a presumption merely for an incidental purpose in the course of, and for the advancement of a trial. It is true that we may presume that in all civilized countries, negligence is unlawful, but it is another and quite different thing to presume that the "law of negligence" is in all respects identical in all of them. No other subject is so fruitful of litigation or more prolific

of nice distinctions. While it is very likely that harmful negligence is held to be culpable wherever legal wrongs are redressed, it is very unlikely that the law in respect to torts, in states governed by the civil code, coincides with, and is without variance from, that where the common law prevails. Presumptions are resorted to for convenience in the administration of law, and in any case and for any purpose it is only the probable, and never the improbable, which the law ventures to assume. I know of no authority questioning these propositions and of no decision binding upon this court that controverts the logical conclusion therefrom.

There is no reason of public policy or comity which requires the courts of this country to relax their rules of procedure, so as to encourage or invite those who suppose themselves clothed with rights of action under foreign laws to litigate them in our courts. Nor is there any hardship, in a case like the present, where the plaintiff omits or declines to fully allege or prove his cause of action, in remitting him to the country by whose laws, and by whose laws alone, his right of action exists. Nor can the plaintiff complain, who seeks to enforce in the courts of this country, in an action of tort, an obligation which if it exists at all, depends absolutely for its existence upon a foreign law, that he should be required to so equip himself as to be able to allege and prove what that foreign law may be.

I think that, in the rulings of the court below upon these questions, there was error, and that the judgment below should be reversed.